## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**NUBIA CARDENAS, individually and as a
natural guardian of Leeyiceth Reyna, a minor,
and SOUTHWEST NATIONAL BANK, as
Conservator for Leeyiceth Reyna, a minor,**

        **Plaintiffs,**

        **vs.**                             **Case No.
04-2478-GTV**

**DOREL JUVENILE GROUP, INC.,
DOREL INDUSTRIES, INC., WAL-MART
STORES, INC., and WAL-MART STORES
EAST, INC.,**

        **Defendants.**

### MEMORANDUM AND ORDER

Plaintiffs Nubia Cardenas, individually and as a natural guardian of Leeyiceth Reyna, a minor, and Southwest National Bank, as conservator for Leeyiceth Reyna, bring this product liability action claiming that Defendants Dorel Juvenile Group, Inc. ("DJG"), Dorel Industries Inc. ("DI"), Wal-Mart Stores, Inc., and Wal-Mart Stores East, Inc., introduced a defective and unreasonably dangerous child safety seat into the stream of commerce. DI has filed a motion to dismiss for lack of personal jurisdiction (Doc. 6). For the following reasons, the court denies DI's motion.

### I.  Standard for Judgment

DI moves the court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2). In opposing

1

a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction over the defendant.  OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted).  Where, as here, the court does not hold an evidentiary hearing, and the motion rests on the plaintiff's complaint and affidavits submitted by the parties, the plaintiff need only make a prima facie showing of personal jurisdiction.  Id. (citation omitted).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.  In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)) (further citation omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995) (emphasis and citation omitted).   To determine whether jurisdiction is legitimate under the laws of Kansas, the court looks to the Kansas long-arm statute, K.S.A. § 60-308(b).  However, "[b]ecause the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, [the court] proceed[s] directly to the constitutional issue."  Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1305 (10th Cir. 1994) (citing Volt Delta Res., Inc. v. Devine, 740 P.2d 1089, 1092 (Kan. 1987)).

The due process clause permits the exercise of jurisdiction over a nonresident defendant

2

"so long as there exist 'minimum contacts' between the defendant and the forum State."   World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).   The "minimum contacts" standard may be established by either specific jurisdiction or general jurisdiction.   In OMI Holdings, Inc., the Tenth Circuit explained the requirements for establishing specific jurisdiction as follows:

> Our specific jurisdiction inquiry is two-fold.   First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there."   World-Wide Volkswagen, 444 U.S. at 297.   Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, Burger King Corp., 471 U.S. at 472, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 109 (1987) (internal quotations omitted) (emphasis in the original).   Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." Id. at 113.   This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. See id.

149 F.3d at 1091.   A court may maintain general jurisdiction over a defendant based on the defendant's general business contacts with the state.   Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415 (1984)).   General jurisdiction exists when the defendant's contacts with the forum state are so systematic and continuous that the court may exercise jurisdiction over the defendant even though the claims at issue are unrelated to the defendant's contacts with the state. Id. (citation omitted).

## II.  Factual Background

On October 12, 2002, Leeyiceth Reyna (then sixteen months old) was strapped into her Dorel "Touriva" child safety seat when another car struck the car in which she was riding.  As a result of the accident, the child suffered a severe closed head injury.  The child safety seat was purchased at a Wal-Mart store in Kansas, and the child was injured in Kansas.

DJG is a Massachusetts corporation with its principal place of business in Indiana.  DJG manufactures the Touriva child restraint system, as well as other models.  DJG is a wholly-owned subsidiary of Dorel U.S.A., Inc., a Delaware corporation with its principal place of business in Indiana.  Dorel U.S.A., Inc. is a wholly-owned subsidiary of DI.

DI is a Canadian corporation.  It functions as an operating company for its domestic divisions and as a holding company for foreign subsidiaries.  DI provides certain structural services to its foreign subsidiaries, such as coordinating financing, procuring lines of credit, and acquiring insurance.  DI has no direct contacts with Kansas in the form of employees, offices, bank accounts, or other property.  DI has no registered agent in Kansas and does not pay taxes in Kansas.

DI coordinates financing and provides "other centralized services" to DJG.  DI is "involved in the review and finalizing of the business plan and budget of each operating division of the Company."  But DI does not contribute toward the salaries of any employee of DJG or pay the expenses of DJG.  DI consolidates its financial statements, and each subsidiary maintains independent financial records, which form the basis of that consolidation.  DI also maintains separate corporate records and observes all corporate formalities independent from DJG.  In early 2002, however, around the time the subject child safety seat was manufactured, DI's Chief

4

Operating Officer, Pierre Dupuis, served as an "interim president" for DJG.   He coordinated the search for a replacement for DJG's president and oversaw the operations of DJG for about two-and-a-half months during the search.

Nick Costides, who was President of DJG in 2002 before Mr. Dupuis replaced him, considered Mr. Dupuis to be his boss.   During Mr. Costides's tenure, Mr. Dupuis approved budgets, capital spending, and operating plans for DJG, and reviewed DJG's quarterly results and monitored DJG's cash flow.   Mr. Costides conferred with Mr. Dupuis and possibly Martin Schwartz, President and Chief Executive Officer of DI, when he hired a new quality control manager in 2001 because he had to "get the approval of his supervisor to do that."   But Mr. Costides also clarified in deposition that Mr. Dupuis "wasn't really involved in the business, per se, other than from that topline view."   For example, he never made decisions regarding how to enhance revenue.

In another pending lawsuit, DI has filed a document showing DI's mailing address as being the same as DJG's, in Columbus, Indiana.   On DI's website, in at least one place, DI identifies DJG as one of its "operating locations," as opposed to an independent subsidiary.

DI has not denied that it funded or otherwise participated in the testing and labeling of the defective child safety seat.   DI also has not denied that it owned the production or manufacturing facility in Columbus, Indiana, where the safety seat was assembled.   Moreover, the only two members of DJG's board of directors, Martin Schwartz and Jeffrey Schwartz, are also two of the members of DI's board.   And in a SEC F-10 form filed in April 1998, DI represented that "the members of the Schwartz family control [DI]."   But Mr. Dupuis has submitted an affidavit in which

he repeatedly denies that DI designs or manufactures child restraint systems.  Specifically, he denies that DI "manufacture[s], design[s], advertise[s], market[s], package[s], sell[s] or distribute[s] child restraints in Kansas."

The evidence controverting Mr. Dupuis's statements consists of documents whereby DI has represented itself to the Securities and Exchange Commission ("SEC") and the public.  Plaintiffs maintain that regardless of how DI and DJG function in actuality, DI has represented to the SEC and the public that it is the manufacturer of products, including the subject child safety seat.  In the April 1998 SEC F-10 form, DI represented that it intended to pursue the following strategies: (1) "Continue Development of High Quality and Innovative New Products"; (2) "Broaden Distribution Channels and Customer Base"; (3) "Continue to Strengthen Role as Leading Supplier to Important Customers"; and (4) "[C]ontinue to evaluate possible acquisitions that offer the potential to broaden its product offerings, expand its distribution channels or improve its manufacturing efficiencies."

In an "Investor Fact Sheet" dated October 2003, DI represented that "Dorel Industries, Inc. is a global manufacturer of consumer products," and that "[t]he Company's major divisions in the United States include . . . the Dorel Juvenile Group."  In other Investor Fact Sheets, DI represented the following: (1) "Dorel is a global consumer products company which designs, manufactures or sources, markets and distributes a diverse portfolio of powerful product brands, marketed through its Juvenile, Home Furnishings, and Recreational/Leisure segments"; (2) "Dorel's juvenile products are designed for consumers whose priorities are safety and quality at reasonable prices. To assure the highest level of consumer safety, the Company continuously researches and

develops safety improvements.   Dorel also tests its car seats at its in-house sled testing facility.
. . .”; and (3) “The Company introduces over 125 exciting new products each year.  Its disciplined
and consistent R&D process supports innovation and creates new markets, while accelerating
speed to market.  Teams of designers, engineers and marketing professionals work together to
ensure that development efforts and plans are fully synchronized and have a clear customer
orientation.”  Likewise, in other marketing materials and press releases, DI has identified itself
as a “global consumer products manufacturer.”

Mr. Dupuis explained in his affidavit why some of DI's documents may appear to represent
DI as a manufacturer:

> For its shareholders, DI, among other things, holds an annual meeting, prepares an
> annual report, distributes quarterly financial statements, and maintains a web site at
> http://www.dorel.com containing press releases and other information.  These
> reports and releases, which provide summaries of events of interest to stockholders,
> frequently refer simply to “Dorel” or “divisions” and “segments” of “Dorel” when
> they discuss the efforts and accomplishments of DI's operating divisions and
> foreign subsidiaries.  Because stockholders are generally affected by, and primarily
> concerned with, the financial results of DI and its subsidiaries as a whole, these
> reports and releases do not, and have no reason to, set forth in exacting detail the
> precise legal description of the structural relationships between DI and its foreign
> subsidiaries.
>
> . . . .
>
> For government regulators, such as the Securities and Exchange Commission, DI
> files a variety of forms which more precisely describe DI's legal structure.  For
> example, in DI's 2002 Renewal Annual Information form, . . . DI sets forth the
> nature of its corporate structure, attaches a chart of its divisions and subsidiaries,
> and distinguishes between the activities of its divisions and subsidiaries, which it
> describes collectively as “Dorel,” and those of DI itself, which is described as “the
> Company.”  Shareholders and litigants who wish to obtain a precise understanding
> of the relationships between DI and its subsidiaries may look to these public filings.

### III.  Discussion

Plaintiffs argue that this court has specific jurisdiction over DI under the Kansas long-arm statute, K.S.A. § 60-308(b)(7), which provides as follows:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts: . . . (7) causing to persons . . . within this state any injury arising out of an act or omission outside this state by the defendant if, at the time of the injury either (A) the defendant was engaged in solicitation or service activities within this state, or (B) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use.

"[T]he legislative intent of K.S.A. 60-308(b)(7) was to grant in personam jurisdiction to the courts of this state over those who engage in the manufacture, sale, or servicing of products if they receive or can anticipate some direct or indirect financial benefit from the sale, trade, use or servicing of their products within this state." Ling v. Jan's Liquors, 703 P.2d 731, 733 (Kan. 1985) (citing Tilley v. Keller Truck & Implement Corp., 438 P.2d 128, 133-34 (Kan. 1968)). Section 60-308(b)(7) "was intended to provide[] jurisdiction over foreign manufacturers and/or suppliers in products liability cases." Johnson v. Goodyear, S.A. Colmar Berg, 716 F. Supp. 531, 533 (D. Kan. 1989) (citations omitted).

Plaintiffs have alleged that the subject child safety seat was used by Leeyiceth in the state of Kansas and that it caused injury in Kansas.  The key question before the court, then, is whether Plaintiffs have established a prima facie case that DI "manufactured" the child safety seat.  If so, then DI had minimum contacts with Kansas such "that [it] should reasonably anticipate being haled into court [here]," World-Wide Volkswagen, 444 U.S. at 297, and asserting personal jurisdiction

over DI would not offend "traditional notions of fair play and substantial justice," <u>Asahi Metal Indus. Co.</u>, 480 U.S. at 113. DI does not argue that as a manufacturer who sent its allegedly defective product to a Wal-Mart store in Kansas, it would not be subject to this court's jurisdiction; it merely argues that it is not a manufacturer.

Under Kansas law, the term "manufacturer" includes an "entity not otherwise a manufacturer that holds itself out as a manufacturer. . . ." K.S.A. § 60-3302(b). The court determines that under this definition, Plaintiffs have made a prima facie case that DI was a "manufacturer" of the child safety seat. Plaintiffs' evidence shows that DI consistently represented to the public that it was the manufacturer of products, and not merely a holding company. Without repeating all of the evidence laid out in the Factual Background section of this Memorandum and Order, the court notes that DI made numerous statements such as: (1) "Dorel is a global consumer products company which designs, manufactures or sources, markets and distributes a diverse portfolio of powerful product brands, marketed through its Juvenile, Home Furnishings, and Recreational/Leisure segments"; (2) "Dorel's juvenile products are designed for consumers whose priorities are safety and quality at reasonable prices. To assure the highest level of consumer safety, the Company continuously researches and develops safety improvements. Dorel also tests its car seats at its in-house sled testing facility. . . ."; and (3) "The Company introduces over 125 exciting new products each year. Its disciplined and consistent R&D process supports innovation and creates new markets, while accelerating speed to market. Teams of designers, engineers and marketing professionals work together to ensure that development efforts and plans are fully synchronized and have a clear customer orientation." The fact that DI has

9

attempted to explain the representations by arguing that its shareholders do not need to know the precise legal and structural relationships of its companies does not convince the court that the representations should be ignored.

The court recognizes that many of the references DI makes to itself as a manufacturer are generic references, not necessarily specific to the subject child safety seat.  The evidence for asserting jurisdiction over DI is not compelling.  But the court finds it substantial enough to infer that DI is a manufacturer at this stage of the litigation.  By holding itself out as a manufacturer, DI has engaged in minimum contacts with the state of Kansas.  And DI  has not offered reasons "demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  OMI Holdings, Inc., 149 F.3d at 1091 (quoting Burger King Corp., 471 U.S. at 477) (further citation omitted).

Although Plaintiffs also argue that this court has general jurisdiction over DI and that jurisdiction is appropriate by application of the alter ego doctrine, the court need not address those arguments at this time.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant Dorel Industries Inc.'s motion to dismiss (Doc. 6) is denied.

Copies or notice of this order shall be transmitted to counsel of record.

10

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 14th day of March 2005.

/s/ G. T. VanBebber
G. Thomas VanBebber
United States Senior District Judge

11