DJW/bh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**NUBIA CARDENAS, et al.,**

    **Plaintiffs,**

               **CIVIL ACTION**

**v.**

               **No:  04-2478-KHV-DJW**

**DOREL JUVENILE GROUP, INC., et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

    Pending before the Court is Plaintiffs' Motion to Compel Discovery (doc. 39).  Plaintiffs move to compel responses by Defendant Dorel Juvenile Group, Inc. ("DJG") to Plaintiffs' First Interrogatories No. 1-4 and 8-11.  Plaintiffs also move to compel DJG to respond to Plaintiffs' First Requests for Production No. 2-8, 10-28, 30-42, 45- 50, and 56, and to identify (by Bates Number) the documents that DJG contends are responsive to each specific request.  In addition, Plaintiffs move the Court for an order requiring (1) DJG to bear the costs of producing documents responsive to the First Requests for Production, and (2) each party to bear the costs of its own document productions for the duration of the case.  Finally, Plaintiffs seek to recover the fees and expenses they have incurred in connection with the filing of this motion.

    For the reasons set forth below, the Court will grant in part and deny in part the Motion to Compel. The Court will also grant Plaintiffs' request for an award of fees and expenses.

I.      **Background Information**

This is a product liability lawsuit involving a Touriva child safety seat ("Touriva").  According to Plaintiffs, the Touriva was designed, tested, manufactured, labeled, distributed, and sold by DJG and its parent corporation, Dorel Industries, Inc.[1]

This case arises out of an automobile crash that took place on October 12, 2002.  Leeyiceth Reyna, who was then eighteen months old, was restrained in a Touriva in the rear seat of one of the automobiles involved in the crash.[2]  Plaintiffs claim that as a result of the crash, Leeyiceth hit her head on one or both of the notched, rigid, unpadded and hard plastic "side wings" of the Touriva, causing her to suffer massive and permanent brain damage and other life-altering injuries.[3]  Plaintiffs allege that, with a properly designed seat, Leeyiceth would not have sustained such injuries.

Plaintiffs assert strict liability claims against DJG and Dorel Industries, Inc. based on alleged design, testing, manufacturing, labeling, and warning defects in the Touriva.[4]  Plaintiffs also assert claims against DJG and Dorel Industries, Inc. for negligence in the design, testing, manufacture, labeling, and warning of

---

[1]Compl. (doc. 1), ¶¶ 4, 7 & 9.

[2]Id., ¶¶ 14-15.

[3]*Id.*, ¶ 40.

[4]*Id.*, Count I.

defects in the Touriva.[5]  In addition, Plaintiffs bring claims under the Kansas Consumer Protection Act

against all Defendants, alleging that the sale of the Touriva was a deceptive and unconscionable act.[6]

Plaintiffs claim that the Touriva is defective and unreasonably dangerous for several reasons, the

primary one involving "the placement of the non-functional 'molded insert' with its hard, sharp edges just

inches a way from a child's head and the absence of any side impact protection through the use of EPS

foam."[7]  Plaintiffs assert that many safety seats incorporate the use of EPS foam in the side wings to provide

side impact protection.  According to Plaintiffs, safety seats using EPS foam to absorb the shock of side

impacts have been available since 1993.

## II.    Plaintiffs' First Interrogatories

### A.    First Interrogatories No. 1-4

After the Motion to Compel was filed, DJG answered First Interrogatories No. 1-4.  Plaintiffs

indicate in their reply that they accept these responses and that the motion is now moot as to these four

interrogatories.

### B.    First Interrogatory No. 8

This interrogatory asks for the following information:

Do you know what level of peak head accelerations and/or HIC that the head of a child
between 1 and 3 years of age can withstand before permanent brain damage will result?
_____ Yes; No _____.  If your answer is "yes," please generally describe your knowledge

---

[5]*Id.*, Count II.

[6]*Id.*, Count V.

[7]Pls.' Mem. in Supp. of Mot. to Compel Disc. (doc. 45) at p. 3.

on this subject and identify all documents that discuss, refer, relate or pertain to this subject.

DJG asserted no objections to this interrogatory.  It responded:
On information and belief, DJG understands that the level of peak head acceleration or HIC that can be withstood before permanent brain damage will result varies from child to child within this age group.

Plaintiffs move to compel DJG to answer this interrogatory, arguing that DJG's answer is "deliberately evasive" and incomplete.  The Court disagrees, and finds that DJG has answered the interrogatory in an appropriate manner.  The Court therefore denies the Motion to Compel as to this Interrogatory.

**C.      First Interrogatory No. 9**

This interrogatory asks:

Was it feasible, in April, 2002, for you to have utilized an EPS insert similar to that used on the side wings of the Maxi Priori on the side wings of the Touriva?  (So there is no confusion, photographs of the Priori and its BPS insert are shown below.)

DJG objected on the grounds that the interrogatory is vague and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs specifically address DJG's vagueness objection in their Motion to Compel.  DJG, however, does not respond to that discussion nor does it address or in any way re-assert the objection in its responsive brief.

When ruling upon a motion to compel, the Court will consider only those objections that have been (1) timely asserted, *and* (2) relied up in response to the motion to compel.[8]  Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned.[9]  As DJG has failed to rely upon its vagueness objection in its response to the Motion to Compel, the Court deems DJG's vagueness objection abandoned.

The Court will now consider DJG's only remaining objection, that the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .   Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[10]  Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[11]  A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[12]

---

[8]*Sonnino v.. Univ. of  Kan. Hosp. Auth.,* 221 F.R.D. 661, 670 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[9]*Sonnino*, 221 F.R.D. at 670; *Cotracom*, 189 F.R.D. at 662.

[10]Fed. R. Civ. P. 26(b)(1).

[11]*Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D. Kan. 2004); *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).

[12]*Owens*, 221 F.R.D. at 652; *Sheldon*, 204 F.R.D. at 689-90.

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[14]

This interrogatory does not, on its face, appear to seek relevant documents.  Plaintiffs, however, provide the following information to show how the materials sought are relevant to their claims.  The "Maxi Priori" is another type of car seat similar to the Touriva.  Maxi and DJG have the same parent corporation, and, thus,  "what Maxi knows, DJG knows."[15]  DJG engineers helped design the Priori, and DJG tested, certified, marketed, and sold the Maxi Priori to United States customers in the late 1990s, before the Touriva was manufactured.  Unlike the Touriva, the Maxi Priori used a design that incorporated EPS foam in its side wings to provide side impact protection.

Plaintiffs argue that Interrogatory No. 9 seeks very relevant information—it asks DJG to state whether it was feasible for the Touriva to have used an EPS insert similar to that used on the side wings of the Maxi Priori.  Whether DJG could have provided such side impact protection in the Touriva goes to the

---

[13]*Owens*, 221 F.R.D. at 652; *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[14]*Owens*, 221 F.R.D. at 652; *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000).

[15]Pls.' Mem. in Supp. of Mot. to Compel Disc. (doc. 45) at p. 4.

heart of Plaintiffs' claims that the Touriva was defective, particularly due to the absence of any side impact protection, and that DJG was negligent in the design, testing, and warning of defects in the Touriva.

DJG counters that the interrogatory does not seek relevant information because the Touriva and Maxi Priori are different types of child restraint systems.  According to DJG, the Priori is a forward-facing booster seat for children older than twelve months and heavier than twenty pounds. The Touriva, on the other hand, is a convertible child car seat designed for use by newborns and young infants in a rear-facing orientation and by toddlers in a forward-facing orientation.   The Priori is no longer sold in the United States but is sold in Europe, where it retails for $200.  The Touriva is sold in the United States and retails for about $50.  The Priori's shell is designed to meet European testing standards, while the Touriva's shell is designed to comply with the different performance standards of the United States.  DJG states that "[t]he Priori has an EPS insert in order to comply with European testing standard ECE-R44-04 (a standard not adopted in the United States) but it does not have the Touriva's 'molded insert.'"[16]

DJG argues that these differences between the Touriva and the Maxi-Priori render information about the Priori irrelevant to this case.  Further, DJG argues that the only issue in this case is whether the Touriva's "molded insert" rendered the Touriva defective.  The issue is not whether the Priori or any other child restraints may have been safer.

After carefully considering these arguments and the allegations in Plaintiffs' Complaint, the Court finds that First Interrogatory No. 9 seeks information relevant to Plaintiffs' claims and is reasonably calculated to the lead to the discovery of admissible evidence.  Plaintiffs' Complaint is not limited to the

---

[16]DJG's Resp. to Pls.' Mot. to Compel Disc. (doc. 58) at p. 5.

issue of whether the molded insert was defective.  The lawsuit is much broader than that, and includes allegations that the Touriva was defectively designed due to the lack of adequate lateral impact protection and that DJG failed to test for lateral impacts and to warn that the Touriva provided no lateral impact protection.[17]  In addition, the law in Kansas is clear that "evidence of a feasible alternative design is admissible in design defect cases."[18]  The Court finds that this interrogatory is calculated to lead to the discovery of evidence regarding whether the Priori provided lateral impact protection that was a safer, feasible alternative design.  Accordingly, the Court overrules DJG's objection that the interrogatory is not calculated to lead to the discovery of admissible evidence.

To recap, the Court deems DJG's vagueness objection abandoned and overrules DJG's relevance objection.  The Court therefore grants the Motion to Compel as to First Interrogatory No. 9.  DJG shall serve an amended response to this interrogatory within **twenty (20) days** of the date of this Order.

### D.      First Interrogatories No. 10 and 11

First Interrogatories No. 10 and 11 seek more information regarding the "Side Protection System" of the Priori.  First Interrogatory No. 10 asks whether the EPS in the side wings of the Priori "constitute[s] a 'Side Protection System' for child occupants of the Priori as the documentation provided with the Priori states," and, if it does, asks DJG to explain how the use of EPS in the Priori provides side protection to child occupants.  First Interrogatory No. 11 asks DJG to identify each individual component of the "Side

---

[17]*See* Compl. (doc. 1),  ¶¶ 18-20, 30-39, 44, and 53.

[18]*Jenkins v Amchem Prods., Inc*., 256 Kan. 602, 636, 886 P.2d 869 (1994).  *See also Siruta v. Hesston Corp*., 232 Kan 654, 667, 659 P.2d 799 (1983) ("In products liability cases, the plaintiff in sustaining its burden to prove that a product is defectively designed may properly show the feasibility of a safer design.").

Protection System" in the Priori and for each component to state (1) how the component provides the child with "Side Protection, and (2) the cost of each such component for each year DJG has used it in the Priori. DJG objected to both interrogatories as not reasonably calculated to lead to the discovery of admissible evidence.

For the same reasons discussed above in connection with First Interrogatory No. 9, the Court finds the requested information to be relevant to Plaintiffs' product liability claims and that the interrogatory is reasonably calculated to lead to the discovery of admissible evidence, particularly evidence regarding the feasibility of a safer alternative design. The Court therefore overrules DJG's objections to these interrogatories and grants the Motion to Compel as to them. DJG shall serve amended responses to these interrogatories within **twenty (20) days** of the date of this Order.

## III.     Plaintiffs' First Request for Production of Documents

### A.       Response That Documents "Have Been Produced"

As a threshold matter, Plaintiffs complain that in many instances DJG responded to the First Requests for Production by stating responsive documents "have been produced." Plaintiffs explain that no documents have been produced other than the approximately 18,000 documents DJG produced with its Rule 26(a)(1) initial disclosures in March 2005. Plaintiffs contend that DJG's written responses indicating that the documents "have been produced" are insufficient, and they request that the Court order DJG to identify (by the Bates Numbers affixed to each document), which documents DJG contends are responsive to each specific document request. DJG counters that it was proper to respond to various requests by

stating that "documents have been produced" because the documents that were produced were provided to DJG "as they are kept in the usual course of business."

Federal Rule of Civil Procedure 34 governs requests for production of documents. Subsection (b) provides that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." This provision was added to Rule 34(b) to prevent parties from "deliberately . . . mix[ing] critical documents with others in the hope of obscuring significance."[19]

In light of Rule 34(b), the question before the Court is whether the documents previously produced by DJG as part of its initial Rule 26(a)(1) disclosures were produced "as they are kept in the usual course of business." Certainly, when DJG provided the documents to Plaintiffs in March 2005 DJG did not indicate that they were being produced to Plaintiffs as they are kept in the ordinary course of business. The March 4, 2005 transmittal letter merely indicates that there are twelve categories of documents being produced and provides the Bates Stamp Numbers for the documents in each of the categories. The fact that DJG did not expressly state in the transmittal letter that the documents were being provided as there were kept in the ordinary course of business is not determinative, however. Rather, the Court must decide, based on the information now provided by the parties, whether the documents previously provided by DJG were produced as they were kept in the ususal course of business.

---

[19]*See* Advisory Committee Note for 1980 Amendment to Rule 34 (quoting Report of the Special Committee for the Study of Discovery Abuse, Section of Litigation of the American Bar Association (1977)).

The documents DJG previously produced consist of 18,000 or more documents. DJG produced them in nine "bankers' boxes." DJG asserts in its response to the Motion to Compel that the documents were produced as they were kept in the usual course of business "as reflected in its transmittal letter expressly identifying the categories of documents . . . it was producing."[20] The transmittal letter describes twelve different categories of documents:  Touriva Design Drawings and Patents, Instructions/Labels, Catalog Pages, Touriva Model Files, S. Saxton Product Development Committee Meeting Notes, Product Development Committee Meeting Minutes, Sales Report, Touriva Internal Testing, Touriva External Testing, E-mails, Consumer Log/Complaints/Claim letters, and Insurance Policies.[21]  As noted above, each of these twelve categories is identified by Bates Stamp Numbers.

DJG provides no additional information about these documents. It does not explain the origin of any of these twelve categories of documents, i.e. where these documents were maintained or who maintained them, and whether the documents in each category came from one single source or file or from multiple sources or files. In short, DJG does not provide the Court with any information, let alone evidentiary proof, to establish that the documents were produced as kept in the ordinary course of business. Rather, DJG merely makes the unsupported assertion that they were produced in that manner. While DJG did group the documents into twelve different categories, the Court does not find that such categorization satisfies the "usual course of business" criterion.

---

[20]DJG's Resp. to Pls.' Mot. to Compel Disc. (doc. 58) at p. 3.

[21]*Id.*, Ex. B.

Rule 34 does not explain what it means to produce documents "as they are kept in the usual course of business," and there is very little case law to guide the Court in making this determination.[22]   In the absence of such guidance, the Court holds that a party who chooses the Rule 34(b) option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner.  A mere assertion that they were so produced is not sufficient to carry that burden.   In addition, merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business.

In light of the foregoing, the Court holds that DJG has not met its burden to establish that it produced these documents "as they are kept in the usual course of business."  Because DJG did not produce them as kept in the usual course of business, it should have organized and labeled them to correspond with the categories in each request, as required by Rule 34(b).[23]  Since the documents have already been provided to Plaintiffs, the easiest way for DJG to comply with the "organize and label" requirement would be for DJG to identify, by the Bates Numbers the DJG lawyers have already stamped

---

[22]The Court finds the facts of this case somewhat similar to those present in *Scripps Clinic and Research Found. v. Baxter Travenol Labs., Inc.*, Civ. A. No. 97-240-CMW, 1988 WL 70013 (D. Del. June 21, 1988).  There, the Court granted a motion to compel the defendant to label the documents it had produced to correspond to each request.  The defendant had merely referred the plaintiff to more than 45,000 documents that the defendant had previously produced.  Those 45,000 documents were placed in fifteen boxes and were arranged in bundles within each box.  In granting the motion, the court noted that "most of the bundles contained no designation as to the origin of the file, the name of the file, or whether the bundles contained documents from multiple files." *Id.* at *4.

[23]Fed. R. Civ. P. 34(b).

on the documents, which documents are responsive to each of the document requests, as Plaintiffs have requested.

Within **twenty (20) days** of the filing of this Order, DJG shall serve amended discovery responses to those requests that it responded to by referring Plaintiffs to "previously produced" documents, and shall identify by Bates Stamp Number which documents are responsive to which requests.[24]

### B.    First Requests No. 2-3 and 5-6

DJG objected to these requests on the basis that they are not reasonably calculated to lead to the discovery of admissible evidence. In its response to the Motion to Compel, however, DJG indicated that it "has produced those documents it can locate responsive to Requests 3, 5 and 6."[25] It also indicated that it "has offered to produce" the documents responsive to Request No. 2.[26]

In their reply brief, Plaintiffs represent that DJG has not produced any of the documents responsive to Requests No. 3, 5, or 6 and that the Motion to Compel is still ripe as to those requests. Plaintiffs explain that, instead of providing copies of the documents to Plaintiffs, DJG has informed Plaintiffs that their counsel must either (1) fly to Chicago to inspect the documents, or (2) pay for the documents to be shipped from Chicago to the offices of its local counsel (located in Kansas City, Missouri), where Plaintiffs' counsel can inspect them and have them copied at Plaintiffs' expense.

---

[24]*See Allianz Ins. Co. v. Surface Specialties, Inc.,* No. Civ. A. 03-2470-CM-DJW, 2005 WL 44534, at *3 (D. Kan. Jan. 7, 2005) (ordering party to serve supplemental discovery responses in which it identified the particular documents responsive to each request).

[25]Reply in Supp. of Pls.' Mot. to Compel Disc. (doc. 59) at p. 6.

[26]*Id.*

Federal Rule of Civil Procedure 34 provides that a request for production or inspection "shall specify a reasonable time, place and manner of making the inspection."[27]  It further provides that  the party upon whom the request is served must serve a written response within thirty days  after service, and  that "[t]he response shall state . . . that inspection and related activities will be permitted *as requested, unless the request is objected to . . . .*"[28]

Here, Plaintiffs' requests for production were prefaced with the following:

> Pursuant to Fed. R. Civ. P. 34, plaintiffs ask defendant Dorel Juvenile Group, Inc. to produce the following documents and tangible things for inspection and copying, within thirty days after service hereof, at the offices of Douthit Frets Rouse Gentile & Rhodes, L.L.C., 903 East 104th Street, Suite 610, Kansas City, Missouri 64131.

DJG did not serve any objections to this instruction regarding the place and manner of making the inspection.  Nor did DJG timely propose a reasonable alternative to the requested place or manner when it served its initial written responses.[29]  The Court holds that DJG was not entitled to wait until the Motion to Compel was filed to change the place and manner of production.  Accordingly, the Court concludes that the documents must be produced for inspection and copying at the offices of Plaintiffs' counsel.  The question remains, however, whether DJG may (1) charge Plaintiffs for the expense of shipping the

---

[27]Fed. R. Civ. P. 34(b) (emphasis added).

[28]*Id.* (emphasis added).

[29]*See Lee v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 655  (D. Md. 1997) (party responding to requests for inspection/production must make written response to requests, and if it does not agree to the requested time, place or manner of production, it should propose reasonable alternative method; vague assurance that documents will be produced in the future at mutually agreeable time and place does not comply with Rule 34, and may be treated as failure to answer).

photocopied documents from Chicago to Plaintiffs' counsel's offices in Kansas City, and (2) require Plaintiffs to reimburse DJG for any photocopying charges.

While there is a general presumption "that the responding party must bear the expense of complying with discovery requests,"[30] that presumption is trumped by Rule 34.  Courts have held that under Rule 34, a responding party need only make requested documents *available* for inspection and copying; it need not pay the copying costs.[31]  Consequently, DJG is not required to pay for any photocopying of the requested documents.

As Plaintiffs chose to have the production take place at their counsel's offices in Kansas City rather than in Chicago, DJG is entitled to photocopy the requested documents prior to shipping them to Kansas City and may require Plaintiffs to reimburse it for all reasonable photocopying expenses.[32]  For the same reason, DJG is entitled to charge Plaintiffs for the reasonable cost of shipping the copied documents to Kansas City.

---

[30]*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 2393, 57 L.Ed.2d 253 (1978).

[31]*Brassco, Inc. v. Klipo,* No. 99 Civ. 3014 (RMB) (DF), 2004 WL 1385816 (S.D.N.Y. June 21, 2004); *Dew v. 39th Street Realty, No.* 99 Civ. 12343 (WHP) (JCF), 2001 WL 388053, at *1 (S.D.N.Y. Apr. 16, 2001) (responding party is only required to produce original documents for the requesting party's inspection, to be copied at the requesting party's cost); *Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293, 297 (W.D. N.Y. 1996) ("Rule 34 allows the plaintiff 'to inspect and copy' relevant documents and does not require a responding party to pay for copying costs of voluminous materials.").

[32]Had Plaintiffs elected to inspect the original documents in Chicago, they would have had the choice of examining the documents prior to making any decisions about which documents to have photocopied.

The Court directs counsel for the parties to confer within **ten (10) days** of the date of this Order to discuss the reasonable shipping and photocopying expenses for these documents.  Within **ten (10) days** thereafter, DJG shall ship the photocopied documents to Plaintiffs.  The parties are free to make other arrangements for the inspection or production of these documents *so long as the parties agree as to all arrangements.*

### C.      First Request No. 4

DJG objected to this request on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence.  However, in its response to the Motion to Compel, DJG stated that it "has no documents responsive to Request 4."  The Court assumes, then, that DJG is waving its asserted objection to this request and that it has no documents to produce that are responsive to this request.

The Court cannot compel the production of documents that do not exist or that are not in the possession, custody or control of a party.[33]   Based on DJG's representation that it has no responsive documents, the Court will deny the Motion to Compel as to First Request No. 4.  The Court, however, will direct DJG to serve an amended written response to this request affirmatively stating that it has no documents in its possession, custody or control which are responsive to this request.  The amended response shall be served within **twenty (20) days** of the date of this Order.

---

[33]*Sonnino v. Univ. of Kan. Hosp. Auth.,* No. 02-2576-KHV-DJW, 2004 WL 764085, at *1 n.2 (D. Kan. Apr. 8, 2004).  Rule 34 imposes a duty on the responding party to produce only those documents that are in its "possession, custody or control."  *Am. Maplan Corp. v. Heilmayer*, 203 F.R.D. 499, 501 (D. Kan. 2001) (citing Fed. R. Civ. P. 34).

### D.      First Request No. 7

This request seeks "[a]ll blueprints, design drawings or other similar documents that depict the Touriva and each component part thereof."  DJG objected on the basis that the reference to "other similar documents" is vague.  DJG asserted no other objections, but then stated: "[s]ubject to and without waiving this objection, . . . all blueprints and design drawing that depict the Touriva sold in the United States and it component parts have been or will be produced."

In its response to the Motion to Compel, DJG did not reassert or even discuss its vagueness objection.  It merely argued that the request was improper because it is not limited to "side impact protection" and noted that DJG has agreed to produce all design, development and testing documents for those Tourivas made to U.S. specifications and subject to the same governmental regulations as the one used by Leeyiceth.

This Court has held on numerous occasions that objections asserted in a party's initial response to discovery request—but not reasserted in response to a motion to compel—are deemed abandoned.[34]  Here, DJG failed to reassert its vagueness objection in its response to the Motion to Compel.  The Court therefore deems it abandoned.

DJG asserted no other objection to this request when it served its initial response to it.  While DJG limited its answer to those Tourivas sold in the United States, it asserted no objection or reason for so

---

[34]*See, e.g., DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 681 (D. Kan. 2004) (deeming privileges and confidentiality objection waived where not reasserted in opposition to motion to compel); *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 n.16 (D. Kan. 2004) ("objections initially raised but not relied upon in response to a motion to compel are deemed abandoned"); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan.1999) (The court "generally deems objections initially raised but not relied upon in response to the motion [to compel] as abandoned").

limiting its response.  It was not until DJG filed its opposition to the Motion to Compel that it asserted an overly broad/relevance objection upon which it predicated its limited response.

It is well settled that a party may not unilaterally modify a discovery request and respond to only a portion of the request without asserting an objection to it.[35]  It is also well settled that when a party fails to assert an objection in its initial response to the discovery request and raises it for the first time in response to a motion to compel, the objection is deemed waived.[36]  In light of the above, DJG's overly broad and relevance objections to this request, which were asserted for the first time in its response to the Motion to Compel, are deemed waived.

As DJG asserted no other objections to this request, the Court will grant the Motion to Compel as to this particular request.  Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

---

[35]Rule 34 requires a written response to a request for production to "state with respect to each item or category, that inspection and related activities will be permitted as requested, *unless the request is objected to*, in which event the reasons for the objection shall be stated.  *If objection is made to part of an item or category*, the part shall be specified and inspection permitted of the remaining parts."  Fed. R. Civ. P. 34(b) (emphasis added).

[36]*Sonnino v. Univ. of  Kan. Hosp. Auth.*, 220 F.R.D. 633, 657 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).  *See also Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (quoting Fed. R. Civ. P. 33(b)(4) ("untimely objections are 'waived unless the party's failure to object is excused by the court for good cause shown.'")).

### E.     First Request No. 8

This request asks DJG to produce each "Engineering Change Notice that [it] made that pertains to the Touriva or any component part thereof." DJG objected on the basis that the request is overbroad and seeks materials that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. It then stated as follows: "Subject to and without waving these objections, . . . all responsive documents pertaining to the Touriva child restraint system sold in the United States and its component parts have been or will be produced."

In its response to the Motion to Compel, DJG argues that the request is objectionable because it is not limited to the Touriva as manufactured in the United States, which is the one that Leeyiceth was using. DJG contends discovery should be limited to only those car seats that are subject to the same governmental regulations as the one used by Leeyiceth.

The Court is not persuaded by DJG's arguments. As discussed above, relevancy is broadly construed, and a request for discovery must be considered relevant if there is "any possibility" that it may have a bearing on the claim or defense of a party.[37]

Here, engineering change notices would reveal changes that were made to the Touriva or any of its component parts. Conceivably, the request could result in the discovery of evidence that changes were made to the Touriva that would have made it a safer or less safe product. It does not necessarily matter whether the change was made to a Touriva sold in the United States or not, for, as discussed above, one of the issues in this case is whether a safer, feasible alternative design was available. It could also lead to

---

[37]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004); *Sheldon v. Vermonty,* 204 F.R.D. 679, 689-90 (D. Kan. 2001).

the discovery of evidence regarding DJG's *knowledge* of a design defect or of safer, alternative designs. The Court therefore overrules DJG's objections to this request, and the Court will grant the Motion to Compel. Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce or make available for inspection and copying the requested documents.

**F.      First Requests No. 10 and 15**

First Request No. 10 asks DJG to produce "all documents that discuss, refer, relate or pertain to" certain testing performed by DJG or on its behalf.  First Request No. 15 asks DJG to produce "all documents that discuss, refer, relate or pertain to the 'shield opening covers' used on the Touriva." DJG asserted no objections to either of these requests and stated that "all responsive document have been or will be produced."

Plaintiffs move to compel DJG to produce the documents that it indicated it would produce. In response to the Motion to Compel, DJG argues for the first time that it should not be required to provide the requested documents because the requests are facially improper as they use improper omnibus phrases such as "relates to" and "pertains to."

As discussed above, the Court will deem an objection waived when a party fails to assert the objection in its initial response to the discovery requests and raises it for the first time in response to a motion to compel.[38]   By failing to assert this objection when it served its initial response to each of these requests, DJG waived the objection.  The Court will therefore grant the Motion to Compel as to these two requests.  Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response

---

[38]*Sonnino,* 220 F.R.D. at 657; *Starlight Int'l,* 181 F.R.D. at 496.

to these requests and either produce the requested documents or make them available for inspection and copying.

### G.      First Request No. 11

This request asks for documents that "discuss, refer, relate or pertain to" the discovery of certain problems with the initial development of the shield where is was attached to the shell of the Touriva. DJG objected to the request as not reasonably calculated to lead to the discovery of admissible evidence. DJG stated, however, that "subject to and without waiving this objection," DJG had already produced, or would produce, all responsive documents. Plaintiffs now move to compel DJG to produce the documents it indicated it would provide.

In response to the Motion to Compel, DJG asserts for the first time that the request is facially improper because it uses the omnibus terms "relating to" and "pertaining to."  DJG waived this objection by failing to assert it in its initial response. Furthermore, for the reasons, discussed above with respect to First Request No. 8, the Court overrules DJG's objection that it is not reasonably calculated to lead to the discovery of admissible evidence. In any event, DJG agreed in its initial response to produce all responsive documents. DJG therefore has no basis to refuse to produce these documents. The Court will grant the Motion to Compel as to this request. Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

## H.    First Request No. 12

This request reads:

On page 63 of the deposition he gave in the Coyle litigation (12/8/99), Mr. Cone, the designer of the Touriva, testified that in 1992, you intended for the Touriva to "meet European standards."  Produce all documents that discuss, refer, relate or pertain to any consideration given by you to whether the Touriva should or could "meet European Standards."

DJG objected on the basis that the request is vague, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence.  It then stated that "subject to and without waiving these objections," it had already produced, or would produce, all responsive documents concerning the design or development of the Touriva sold in the United States.

Plaintiffs move to compel DJG to produce the documents it agreed to produce.  In addition, Plaintiffs move the Court to overrule DJG's objections and to compel production of *all* responsive documents.

The Court will first consider DJG's argument that the request is facially improper because it uses the terms "relate to" and "pertain to."  The Court construes this argument as supporting an overbreadth objection, which DJG asserted in its initial response to the request.

DJG correctly notes that this Court has held on several occasions that a document request may be overly broad on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning."[39] That holding, however, applies only when the omnibus term is used with respect to a *general category or*

---

[39]*See, e.g., Sonnino v. Univ. of Kan. Hosp. Auth.,* 221 F.R.D. 661, 667 (D. Kan. 2004); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003).

*broad range of documents.*[40]   As this Court has previously noted, a request may be overly broad on its

face "if it is couched in such broad language as to make arduous the task of deciding which of numerous

documents may conceivably fall within its scope."[41]   A request seeking documents "pertaining to" or

"concerning" a broad range of items "requires the respondent either to guess or move through mental

gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either

obvious or hidden, within the scope of the request."[42]   When, however, the omnibus phrase modifies a

sufficiently specific type of information, document, or event, rather than large or general categories of

information or documents, the request will not be deemed overly broad on its face.[43]

     Applying these standards, the Court finds that this request is not so all-encompassing as to make

it overly broad on its face.  The omnibus terms "refer, relate to" and "pertain to" modify a specific event,

i.e., DJG's consideration of whether the Touriva should or could meet European standards.  The terms do

---

[40]*Sonnino*, 221 F.R.D. at 667-68; *Aikens,* 217 F.R.D. at 538.

[41]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ. A. 94-2395-GTV, 1995 WL 625962, at *6 (D. Kan. Oct. 5, 1995).

[42]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ. A. 94-2395-GTV, 1995 WL 18759 (D. Kan. Jan. 17, 1995).  *Accord Aikens,* 217 F.R.D. at 538.

[43]*Sonnino*, 221 F.R.D. at 667-68.  For example, the Court held a request overbroad and unduly burdensome on its face where it sought all documents "regarding" or "relating to" to the lawsuit and the eleven plaintiffs and their EEOC charges.  *See Aikens*, 217 F.R.D. at 538.  This Court also held a request in a breach of contract suit overly broad on its face where it sought documents that referred or related to any alleged or actual breaches of the contract at issue, the plaintiff's reasons for breaching the contract, and communications between the defendant and any other person regarding termination of the contract.  *See W. Res. v. Union Pacific R.R.*, No. 00-2043-CM, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001).  Similarly, this Court held a request facially overbroad where it requested "all documents concerning plaintiff."  *See Pulsecard, Inc. v. Discover Card Servs.*, No. 94-2304-EEO, 1996 WL 397567, at *6 (D. Kan. July 11, 1996).

not modify a large number or general category of things or events. Thus, the request is not overly broad on its face. The Court therefore overrules this overbreadth objection.

Turning to DJG's vagueness objection, the Court finds that it has been abandoned. DJG did not reassert or discuss this objection in its Motion to Compel.

Finally, the Court will consider DJG's objection that the request is not calculated to lead to the discovery of admissible evidence. To paraphrase, this request seeks documents that relate to any consideration DJG gave to whether the Touriva should or could meet European Standards. The Court does not find that the relevance of these documents is apparent from the face of the request. Plaintiffs therefore have the burden to show how the request seeks relevant information or how it is reasonably calculated to lead to the discovery of admissible evidence.[44] The Court finds that Plaintiffs have failed to meet this burden. The Court therefore upholds this objection.

Although the Court is upholding DJG's relevance objection, DJG is still obligated to produce those documents that it agreed to produce in response to this Request. To the extent DJG has not already produced or provided those documents for inspection and copying, it shall do so within **twenty (20) days** of the date of this Order.

---

[44]*Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D. Kan. 2004); *Gen. Elec. Capital Corp. v. Lear Corp.,* 215 F.R.D. 637, 640 (D. Kan. 2003).

### I.      First Request No. 13

Although DJG asserted various objections to this request, it represents in its response to the Motion to Compel that it "has produced this document."[45]   Plaintiffs, however, indicate in their reply that the document has not been produced—only that Defendant has offered to make it available for inspection in Chicago or to ship it to Plaintiffs' counsel at their expense.

The Court has already addressed the issues relating to photocopying and shipping expenses.  *See* Section III.B., *supra*.  Like the other documents that the Court is compelling DJG to provide, DJG shall either produce this document or make it available for inspection and copying within **twenty (20) days** of the date of this Order.

### J.      First Request No. 14

This request is similar to First Request No. 12.  It reads:

On page 80 of the deposition he gave in the Coyle litigation (12/8/99), Mr. Cone, the designer of the Touriva, testified that individuals employed by you were "discussing" if the Touriva "should meet Canadian and U.K. Standards."  Produce all documents that discuss, refer, relate or pertain to any consideration given by you to whether the Touriva should or could "meet Canadian and U.K. Standards."

DJG objected to this request as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

For the same reasons discussed above with respect to First Request No. 12, the Court does not find this request to be facially overbroad merely because it uses the terms "discuss, refer, relate or pertain to."  The Court therefore overrules DJG's overbreadth objection.  The Court, however, sustains DJG's

---

[45]*See* DJG's Resp. to Mot. to Compel Disc. (doc. 58) at p. 8.

objection that the request is not reasonably calculated to lead to the discovery of admissible evidence.  As with Request No. 12, the Court does not find the relevance of these documents to be apparent on the face of the request.  Furthermore, the Court is not persuaded by Plaintiffs' arguments regarding the relevancy of documents relating to DJG's consideration of whether the Touriva should or could meet Canadian and United Kingdom standards.  Nor does the Court find the request to be reasonably calculated to lead to the discovery of admissible evidence.  The Court therefore upholds DJG's relevance objection, and denies the Motion to Compel as to First Request No. 14.

### K.      First Request No.  16

This request asks DJG to produce a color copy of a certain advertisement for the Touriva.  DJG responded that it did not possess a color copy, but that it would provide a black and white copy.  In its response to the Motion to Compel, DJG represented that it had located a color copy that it would make available to Plaintiffs.   To the extent that DJG has not already provided a color copy to Plaintiffs, DJG shall, within **twenty (20) days** of the date of this Order, produce the requested document or make it available for Plaintiffs' inspection and copying.

### L.      First Request No.  17

This request asks DJG to produce documents that discuss, refer, relate to, or pertain to any suggested changes in the side wings of the plastic shell of the Touriva and which were generated by DJG after January 1, 1999.  DJG asserted no objections to this request.  Instead, it stated that "all responsive documents concerning the design or development of the Touriva child restraint system sold in the United States have been or will be produced."  In its response to the Motion to Compel, DJG asserted various objections.  As those objections were not asserted by DJG in its initial response, the Court deems them

26

waived.  In addition, the Court finds DJG's initial written response that it would produce documents

concerning the Touriva *sold in the United States* to be non-responsive to the request.  The request was

not limited to the Touriva sold in the United States, and as DJG did not object to that portion of the request,

it was not entitled to unilaterally limit the request.

In light of the above, the Court will grant the Motion to Compel as to this request.  Within **twenty**

**(20) days** of the date of this Order, DJG shall serve an amended written response to this request and either

produce the requested documents or make them available for inspection and copying.

## M.     First Request No. 18

DJG asserted various objections to this request, but then stated that, subject to and without waiving

those objections "all responsive documents regarding the catalog pages, instructions and labels relating to

the Touriva child restraint system Model 02-519 manufactured in April 2002 have been or will be

produced."  Plaintiffs assert in their Motion to Compel that none of those documents has been produced.

DJG does not discuss First Request No. 18 in its response to the Motion to Compel.

The Court will grant the Motion to Compel as to "all responsive documents regarding the catalog

pages, instructions and labels relating to the Touriva child restraint system Model 02-519 manufactured in

April 2002" that DJG indicated it would produce.  Within **twenty (20) days** of the date of this Order, DJG

shall serve an amended written response to this request and either produce the requested documents or

make them available for inspection and copying.

## N.     First Requests No. 19-27 and 31

These requests seek documents regarding the Maxi Priori safety seat.  DJG objected to these

requests on the basis that they are not reasonably calculated to lead to the discovery of admissible

evidence.  DJG argues in its response to the Motion to Compel that the documents sought relate to an entirely different product than the Touriva and they are not limited to documents relating to "molded insert" notches similar to those on the Touriva.  Furthermore, the documents sought in Request No. 19-22 and 31 are not limited to side impact protection.

For the reasons set forth above in connection with First Interrogatory No. 9, the Court overrules this objection.

DJG also objected to Requests No. 19-20 on the basis that they are vague.  DJG does not reassert this objection in its response to the Motion to Compel.  The Court thus deems the vagueness objection abandoned.

DJG also objected to Requests No. 19-21 and 31 on the basis that they are overbroad.  To the extent DJG contends they are overbroad because they do not request documents relating to the Touriva, the Court overrules the objection for the same reasons discussed with respect to Interrogatory No. 9.  To the extent DJG contends these requests are facially overbroad because they use the omnibus terms "discuss, refer, relate or pertain to"[46] or "relating to,"[47] the Court overrules the objection.  As used in these four requests, the above-cited terms do not modify a large category of documents or events, but rather specific types of documents and specific events.  Thus, the Court does not find these requests to be facially overbroad.[48]

---

[46]*See* First Requests No. 19-21.

[47]*See* First Request No. 31.

[48]*See Sonnino*, 221 F.R.D. at 667-68.

The Court notes that DJG also argues in its response to the Motion to Compel that First Requests No. 22, 23, and 27 are facially overbroad because they use the same omnibus terms. DJG did not, however, assert such an objection to those requests when it served its initial responses. The Court therefore finds that DJG's facially overbreadth objections as to First Requests No. 22, 23, and 27 have been waived because they were not timely asserted. They are therefore overruled

In light of the above, the Court will grant the Motion to Compel as to First Requests No. 19-27, and 31.

### O.   First Requests No. 28 and 30

These two requests relate to the sale of the Touriva in Europe. As they are difficult to paraphrase, the Court will set them out in their entirety.

First Request No. 28 reads:

On pages 10 and 11 of the deposition he gave in the *UXA v. Dorel* litigation (12/7/01), Richard Glover testified that you distributed child restraints you manufactured in the United States in Europe through a Hungarian company named "Kara." Produce all documents that discuss, refer, relate or pertain to your sale of the child restraint known in the U.S. as the "Touriva" through "Kara" to European consumers.

First Request No. 30 reads:

On page 43 of the deposition he gave in the *Vaughan v. Cosco*[49] litigation (5/2/00), Richard Glover testified that "we do have meetings (with employees of Maxi-Miliaan) at least probably at half-year intervals" and that these meetings pertain to "product exchange; our products going to Europe and their products coming into the U.S. . . ." Produce all documents that discuss, refer, relate or pertain to the child restraint known as the Touriva "going to Europe."

---

[49]DJG was formerly known as Cosco, Inc.  Compl. (doc.1), ¶3.

DJG objected to both of these requests on the basis that they are overbroad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Neither request appears to seek relevant information on its face and both appear overbroad on their face. Plaintiffs, as the propounding party, have the burden to show how the request is relevant and calculated to lead to the discovery of admissible evidence. The Court does not find that Plaintiffs have met that burden as to either of these requests. The Court therefore sustains DJG's objections that these requests are not reasonably calculated to lead to the discovery of admissible evidence and are facially overbroad, and denies the Motion to Compel as to First Requests No. 28 and 30.

### P.      First Requests No.  32 and 33

These requests relate to two e-mail messages and ask DJG to produce various documents relating to the subjects discussed in those messages. DJG objected to the requests because it was not able to locate a copy of either e-mail message and Plaintiffs had failed to provide copies to DJG so that DJG could verify the accuracy of the language Plaintiffs had quoted from the e-mails. DJG also objected on the basis that the requests are not reasonably calculated to lead to the discovery of admissible evidence. It also objected to Request No. 33 on the basis that it is overbroad.

In its response to the Motion to Compel, DJG asserted for the first time the objection that Request No. 32 is overly broad on its face because it seeks all documents "that relate to" the subject discussed in the e-mail. At the same time, however, DJG states that Plaintiffs finally provided a copies of these two e-mail messages to DJG and "DJG will now see whether it has any other documents responsive to these two requests."

The Court interprets this statement to mean that DJG is withdrawing its objections to both of these Requests.  The Court therefore grants the Motion to Compel as to First Requests No. 32 and 33.  Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to these two requests and either produce the requested documents or make them available for inspection and copying.

### Q.      First Requests No. 34 and 35

The only topic at issue with respect to these two requests is DJG's response that it has produced or will produce the responsive documents.  To the extent DJG has responsive documents in its possession, custody, or control it shall serve an amended written response to these requests and either produce the requested documents or make them available for inspection and copying, all within **twenty (20) days** of the date of this Order.

### R.      First Request No. 36

This request asks DJG to produce:

> [T]he document containing the line item in the Bill of Materials generated during the years 1999-2001 for your "Dreamride" or Ultra Dreamride" car bed restraint that identifies the cost to you, per unit, of the foam padding that is used on the sides of the restraint/car bed.

DJG objected on the basis that the request is vague and seeks information not reasonably calculated to lead to the discovery of admissible evidence.  In its response to the Motion to Compel, DJG does not reassert its vagueness objection.  The Court therefore finds that DJG's vagueness objection has been waived.

While DJG does reassert its relevance objection, the Court is not persuaded by DJG's argument supporting that objection, i.e., that the requested documents are irrelevant because the Dreamride car seat is "completely dissimilar" to the Touriva.  The Court finds the requested materials to be relevant for the

reasons cited by Plaintiffs, i.e., the requested information may lead to the discovery of potentially admissible regarding the following issues: (1) the economic feasibility of a safer, alternative design; and (2) the type and level of side padding DJG believes is needed to provided an adequate level of side impact protection. It may also be relevant in that the documents may refute DJG's expert opinion that side impact protection does not work and is not worth the extra cost.

In light of the foregoing, the Court overrules DJG's objections to First Request No. 36 and will grant the Motion to Compel as to it. Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce these requested documents or make them available for inspection and copying.

### S.      First Request No. 37

This request asks DJG to produce:

All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of the Touriva.

DJG objected on the basis that the request is overbroad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. It went on to state, however, that without waiving those objections, it would produce "all responsive documents concerning the design of development of the Touriva . . . sold in the United States." In other words it agreed to produce the requested documents but only as to the Touriva sold in the United States.

In its response to the Motion to Compel, DJG failed to reassert or discuss its vagueness and unduly burdensome objections. The Court therefore finds those objections to be abandoned.

32

DJG does reassert its overbreadth objection, asserting that the request is facially improper because it asks DJG to produce all documents that "discuss, reflect, pertain or relate to" the design or development of the Touriva.  The Court finds it curious that DJG continues to assert this objection, in that in its initial response to the request it agreed to provide the requested documents, as limited to the Touriva sold in the United States.  DJG apparently has no trouble discerning what documents are responsive to this request as to the design and development of the Touriva sold in the United States and is able to produce those documents without engaging in "mental gymnastics."[50]  DJG should therefore be able to do the same for the Touriva sold outside of the United States.  DJG's objection that the request is facially overbroad is therefore overruled.

The Court also overrules DJG's objection that the request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it is not limited to the Touriva sold in the United States or to specific issues relating to side impact protection.  As the Court discussed in connection with First Request No. 8, discovery need not be limited to the Touriva sold in the United States.  Also, the Court finds the arguments Plaintiffs make at pages 18-19 of their supporting memorandum to be persuasive as to how this request may lead to the discovery of admissible evidence, including potential evidence regarding a safer, alternative design.

In light of the foregoing, the Court therefore overrules these objections and grants the Motion to Compel as to First Request No. 38.  Within **twenty (20) days** of the date of this Order, DJG shall serve

---

[50]*See Sonnino v. Univ. of Kan. Hosp. Auth.,* 221 F.R.D. 661, 667 (D.  Kan. 2004) (observing that use of omnibus terms such as "pertaining to" and "concerning" are objectionable where the responding party must engage in "mental gymnastics to determine what documents may or not be called for).

an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

**T.      First Request No. 38**

This request asks DJG to produce all documents that "discuss, reflect, pertain or relate to the performance of the Touriva in side impacts."  DJG asserted no objections to this request, but stated that "all responsive documents concerning the design, development and testing of the Touriva . . . sold in the United States have been or will be produced."  In its response to the Motion to Compel, DJG argued that the request is facially overbroad because it seeks documents that "discuss, refer, relate or pertain to" a category of documents.

The Court will grant the Motion to Compel as to this request.  DJG asserted no objections to this request in its initial response.  As discussed above with respect to First Request No. 7, DJG is not entitled to unilaterally limit a request without asserting some objection upon which the limitation is based Furthermore, DJG is not allowed to cure this deficiency by asserting a facial overbreadth objection for the first time in its response to the Motion to Compel.  Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

**U.      First Request No. 39**

The only issue that Plaintiffs raise with respect to this request is that DJG has yet to provide to Plaintiffs certain documents that it indicated would be produced.  As with the other documents that the Court is ordering DJG to produce, DJG shall, within **twenty (20) days** of the date of this Order, either produce the requested documents or make them available for inspection and copying.

## V.      First Request No. 40

This request seeks documents generated from the time DJG first conceived of the Touriva through the present "which discuss, reflect, pertain or relate to the use of EPS and/or other energy absorbing materials in the side wings" of seventeen enumerated child restraint seats.  The seventeen seats are all those of DJG's competitors.   The request asks DJG to include all documents "discussing any 'reverse engineering'" of any of the seventeen listed seats.  DJG objected on the basis that the request is  not calculated to lead to the discovery of admissible evidence.

In its response to the Motion to Compel, DJG argues for the first time that the request is facially overbroad.  As this objection was not asserted in its initial response to the request, the Court deems it untimely and waived.

With respect to DJG's objection that the request is not calculated to lead to the  discovery of admissible evidence, DJG argues in its response to the Motion to Compel that Plaintiffs have made no showing that any of the listed seventeen models have molded inserts similar to those found in the Touriva. DJG asserts that the issue in this case is not what DJG may have known about the design of its competitor's products, but what DJG knew about the design of the Touriva.

Plaintiffs contend that the request is not objectionable because it is intended to discover information about what steps, if any, DJG has taken to perform "reverse engineering" on its competitors' safety seats. Plaintiffs point out that the request is limited solely to the issue of the use of EPS or other padding in the side wings of those seats.

As the relevance of this request is not apparent on its face, Plaintiffs, as the propounding parties, have the burden to show it is reasonably calculated to lead to the discovery of admissible evidence.[51] The Court finds that Plaintiffs have met that burden.

Plaintiffs explain that each of the seventeen seats listed in this request uses EPS, another type of foam, or air bladders to protect a child's skull in the event of a side impact. Plaintiffs further explain that "reverse engineering" is a well-known term and that the designer of the Touriva, Richard Cone, has testified in other litigation that DJG did "quite a bit of testing" on competitors' seats during the development of the Touriva. Plaintiffs argue that if DJG tested or examined any of the listed seats prior to the date that Leeyiceth's seat was purchased in order to analyze the side impact protection that its competitors were providing then Plaintiffs are entitled to know what testing DJG did and how that testing may have led DJG not to choose to include any of the protection in Leeyiceth's seat. Plaintiffs also assert that if DJG examined any of the seats identified in Request No. 40 after Leeyiceth's seat was manufactured then what it may have learned is relevant to its post-sale duty to warn.

The Court is persuaded by Plaintiffs' arguments and finds that First Request No. 40 is reasonably calculated to lead to the discovery of admissible evidence. The Court will therefore grant the Motion to Compel as to Request No. 40. Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

---

[51]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004); *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000).

### W.    First Request No. 41

This request asks for all documents "which discuss, reflect, pertain or relate to the design or development of the use of energy absorbing material (including, e.g., EPS, foam) on the side wings of the Touriva."  DJG asserted no objections to this request in its initial response.  Instead it stated: "[A]ll responsive documents concerning the design or development of the Touriva child restraint system sold in the United States have been or will be produced."

In its response to the Motion to Compel, DJG asserts for the first time that the request is facially overbroad because it uses the omnibus terms "discuss, reflect, pertain, or relate to."  It also appears to assert a relevance objection for the first time in its Motion to Compel, arguing that the only relevant inquiry is to the Touriva made in the United States.  As DJG did not assert any overbreadth or relevance objections in its initial responses to this request, those objections are deemed waived.  As noted above, DJG may not unilaterally modify a discovery request and respond to only a portion of the request without asserting an objection to it.

As DJG asserted no timely objections to these requests, the Court will grant the Motion to Compel. Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

### X.    First Requests No. 42, 45, and 49

First Request No. 42 seeks the following:

All documents generated from 1993 through today . . . which discuss, reflect, pertain or relate to any "cost/benefit analysis" involving a comparison between child restraints that contain energy absorbing materials on the side wings with child restraints that do not have any such material on the side wings.

First Request No. 45 seeks:

All documents generated from 1993 through today . . . which discuss, reflect, pertain or relate to any safety hazards or risks associated with the use of child restraints that do not contain energy absorbing material on the side wings.

First Request No. 49 seeks:

All documents generated after 1993 which discuss, refer, relate or pertain to any proposals or suggestions for performing any type of side impact testing or analysis on your child restraint products.

DJG objected to these three requests on the basis that they are overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  As to Requests No. 42 and 45, DJG also stated that, subject to and without waiving its objections, "all responsive documents concerning the *design or development* of the Touriva . . . sold in the United States have been or will be produced."[52]  As to Request No. 49, DJG stated that, subject to and without waiving those objections, "all responsive document relating to *dynamic testing* of the Touriva . . . sold in the United States have been or will be produced."[53]

Plaintiffs move to compel DJG to produce those documents that DJG indicated it would produce but has in fact not produced.  Plaintiffs also move to compel DJG to produce *all* other documents responsive to this request, i.e., all documents requested and not just those limited to the design, development, and/or testing of the Touriva sold in the United States.

In its response to the Motion to Compel, DJG asserts vague and undue burden objections to each of these requests.  As these objections were not timely asserted in DJG's initial response, the Court deems them waived.

---

[52]First Req. No. 42 & 45 (emphasis added).

[53]First Req. No. 49 (emphasis added).

The Court will now turn to those objections that DJG *did* assert in its initial responses and which it reasserted in its response to the Motion to Compel.   The Court does not find the requests to be overly broad on their face because they ask for documents "which discuss, reflect, pertain or relate to," as those terms qualify specific groups of documents rather than broad, general categories.   This objection is therefore overruled.

Turning to DJG's objections that the requests are overbroad in scope and not reasonably calculated to lead to the discovery of admissible evidence, DJG argues that First Request No. 42 is objectionable because it asks for documents relating to a cost/benefit analysis as to *all* child restraints by *all* manufacturers.   Similarly, DJG argues that First Request No. 45 is objectionable because it asks for documents relating to safety hazards posed by *any* child restraint that does not have energy absorbing materials on the side wings, i.e., all child restraints (regardless of whom they are manufactured by) that do not have energy absorbing materials on the side wings.   Finally, DJG argues that Request 49 is objectionable because it asks for side impact testing on *all child restraint products made by DJG, and not just the Touriva.*

For the reasons discussed in Plaintiffs' supporting memorandum and reply brief, the Court does not find these requests to be overly broad in scope.   The Court also finds them to be reasonably calculated to lead to the discovery of admissible evidence.   The Court therefore grants the Motion to Compel as to First Requests No. 42, 45, and 49.   Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to these requests and either produce the requested documents or make them available for inspection and copying.

**Y.      First Request No. 46**

DJG asserted no objections to this request and stated in its initial response that all responsive documents have been or will be produced.  Plaintiffs indicate in their Motion to Compel that DJG did not produce any documents with those responses and has not produced any additional documents to date. Plaintiffs therefore move to compel DJG to produce these documents.  DJG does not specifically address this request in its response to the Motion to Compel.

In light of the above, the Court will grant the Motion to Compel as to this request.  Within **twenty (20) days** of the date of this Order, DJG shall either produce the requested documents or make them available for inspection and copying.

**Z.      First Request No. 47**

This request asks DJG to produce static and dynamic testing documents for the Touriva "for any purpose and under any type of test configuration *other than a side impact*."[54]  DJG objected on the basis that the request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. It went on to state, that subject to and without waiving those objections, it had produced, or would produce, "all responsive documents relating to dynamic testing of the Touriva Child Restraint System sold in the United States."

In its response to the Motion to Compel, DJG asserts that the request is facially overbroad to the extent a portion of it requests "all other documents which discuss, reflect, pertain or relate to each such test."  It also asserts that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence because it is pertains to testing relating to any condition *other than a side impact*.

---

[54]First Req. No. 47 (emphasis in original.)

DJG argues that Plaintiffs' claims are based on the alleged absence of side impact protection and the failure to warn that the Touriva did not provide adequate side impact protection. Thus, documents relating to any testing of the Touriva other than for side impacts is not relevant and not likely to lead to the discovery of admissible evidence.

The Court agrees. The relevance of this request is not apparent on the face of the request. Accordingly, Plaintiffs, as the requesting parties, have the burden to show these documents are relevant and how they may lead to the discovery of admissible evidence. Plaintiffs do not meet this burden. Indeed, Plaintiffs' own arguments show why this request is irrelevant. In refuting DJG's argument that the case is only about the design of the molded insert, Plaintiffs state:

> A review of plaintiffs' Complaint makes it clear that it is the absence of adequate *side impact protection* that is repeatedly and consistently alleged in the Complaint, along with the failure to test for *lateral impacts* and to warn that the Touriva provided no *lateral impact protection*. See Complaint at ¶¶ 18-20, 30-39, 44, and 53.
>
> The nature and scope of plaintiffs' claims are also made clear in plaintiffs' initial brief on this Motion, which spends several pages discussing the need for EPS or other *side impact protection* . . . .[55]

Plaintiffs also argue in their supporting memorandum that "[i]t bears repeating that the inability of the Touriva to provide *side impact protection* is the essence of what this case is about."[56]

The briefing on the Motion to Compel and the Court's own review of the Complaint lead the Court to the conclusion that this case is predicated on allegations that the Touriva Leeyiceth was using did not provide adequate *side impact* protection. The Court fails to see how documents relating to testing *other*

---

[55]Pls.' Reply Mem. in Supp. of Mot. to Compel Disc. (doc. 59) at p. 4 (emphasis added).

[56]Pls.' Mem. in Supp. of Mot. to Compel Disc. (doc. 45) at p. 18 (emphasis added).

*than side impact testing* are relevant to this case, and Plaintiffs fail to adequately explain why or how such documents are relevant or how this request may lead to the discovery of admissible evidence. The Court therefore upholds DJG's objections that First Request No. 47 is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. The Motion to Compel is denied as to this request, except to the extent that DJG has agreed to produce certain documents in response to it and DJG has not produced those documents. Within **twenty (20) days** of the date of this Order, DJG shall either produce those documents or make them available for inspection and copying.

### AA.    First Request No. 48

This request asks DJG to produce various documents concerning certain testing—both static and dynamic—of the Touriva. More specifically, it requests all test summaries, test data, test videotapes, test photographs and all other documents that "discuss, reflect, pertain or relate to" such testing "where a Touriva was tested in a *side impact configuration* for any purpose."[57]

DJG objected on the basis that the request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. DJG then stated that, subject to and without waiving those objections, all responsive documents "relating to dynamic testing of the Touriva . . . sold in the United States have been or will be produced."

In its response to the Motion to Compel, DJG asserts that the request is facially overbroad because it requests documents "that discuss, reflect, pertain or relate to" certain testing. It also argues that the request is overbroad in scope and not reasonably calculated to lead to the discovery of admissible evidence because it is not limited to the Touriva sold in the United States.

---

[57]First Req. No. 48 (emphasis in original).

The Court overrules DJG's objection that the request is facially overbroad.  Once again, the Court does not find the request facially overbroad, as the omnibus terms "pertain to" or "relate to" do not modify a general category of documents, but rather specific types of testing and specific documents.

The Court also overrules DJG's remaining objections, for the same reason discussed above in connection with First Request No. 8.  The Court therefore grants the Motion to Compel as to First Request No. 48.  Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

### BB.   First Request No. 50

This request asks DJG to produce documents relating to a new "R-44 sled test bench" and an "updated" sled test bench.  More specifically, Plaintiffs ask DJG to produce documents "which discuss, reflect, pertain or relate to" the design, acquisition, cost, installation, capabilities, potential uses, potential or actual capability to analyze the dynamic crash performance of child restraints in side impacts, and any modifications (proposed or actual) of the new and updated sled testing equipment.  Plaintiffs also request that they be allowed to enter DJG's property to inspect DJG's sled test equipment.  Plaintiffs state in their supporting memorandum that they are seeking "only those documents associated with upgrades and modifications to the sled."[58]

DJG objected to the request on the basis that it is overbroad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  DJG does not re-assert or discuss

---

[58]Mem. in Supp. of Pls.' Mot. to Compel Disc. (doc. 45) at p. 26.

its objections that the request is vague and unduly burdensome. The Court therefore deems those objections abandoned.

In its response to the Motion to Compel, DJG reasserts its overbreadth objection and argues that the request is facially overbroad because it asks for documents that "discuss, reflect, pertain or relate to" DJG's new and updated test sled. DJG also argues that the request is irrelevant because the new sled did not begin operation until July 2004, almost two years after Leeyiceth's accident. DJG asserts that its has produced all tests relating to the United States version of the Touriva, and it is those test results that are relevant to Plaintiffs' claim and not the design or performance of the testing equipment and facilities on which those tests were run.

With respect to DJG's facial overbreadth objection, the Court finds that the omnibus terms describe sufficiently specific categories of documents so as not render the request facially overbroad.

With respect to DJG's relevance objection, the Court finds the request to be relevant and reasonably calculated to lead to the discovery of admissible evidence. While the relevance of these materials is not apparent from the face of the request, Plaintiffs point out that they have asserted numerous allegations based on DJG's failure to test the Touriva. Plaintiffs explain that the requested documents and inspection, although they deal with the new and updated test sled, may shed light on what DJG could or should have done as far as side impact testing of the Touriva used by Leeyiceth.

Although the Court finds that the requested documents may only be marginally relevant, the Court cannot find that "it is clear that the information sought can have no possible bearing" on Plaintiffs' failure to test claims. Consequently, the Court overrules DJG's relevance objection.

Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.   In addition, the parties shall confer and attempt to agree on arrangements for Plaintiffs' representatives to inspect the sled test equipment.

### CC.    First Request No. 56

This request seeks documents regarding other similar incidents.  More specifically, it requests "[a]ll petitions or complaints concerning all lawsuits filed against you where it was alleged that one of your child restraint devices contained a defect that caused or contributed to cause an injury to a child during a vehicular accident, limited to" the following defects related to:  (1) the absence of adequate padding in the side wing, (2) the depth of the side wings, (3) the energy absorbing capacity of the side wings, or (4) the performance of DJG's car seat in crashes involving side impacts.

DJG objected on the grounds that the request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  It then stated that, subject to and without waiving those objections, it had produced all complaints and claim letters involving the Touriva sold in the United States. DJG argues in its Response to the Motion to Compel that the request is objectionable to the extent it seeks documents concerning complaints relating to *all of DJG's child restraints*, which would include car beds and rear-facing infant seats.  Plaintiffs counter that it does not matter what type of restraint is at issue as long as the complaint alleges an injury due to the *same defects* alleged in this case.

It is well settled under both federal and Kansas law that evidence of the occurrence of other accidents involving the same circumstances as the case at issue is admissible pursuant to a strict liability theory, to establish notice or the existence of a defect, or to refute testimony be a defense witness that a

given product was designed without safety hazards.[59]   Evidence of similar accidents is admissible so long as the conditions in effect during the past incidents are "substantially similar"" to those at the time of the incident in question.[60]   Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity; the requirement is relaxed, however, when the evidence of other accidents is submitted to prove notice or awareness of the potential defect.[61]

Although there are specific limits on the *admissibility* of similar lawsuits and complaints, such evidence need not be admissible to be relevant, and, therefore *discoverable*.[62]   For discovery purposes, the court need only find that the circumstances surrounding the other accidents are similar enough that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences.[63]

Applying these principles to the present case, the court concludes that Plaintiffs are entitled to discovery concerning accidents and complaints involving not only the Touriva used by Leeyiceth but also other child restraint devices of DJG that were alleged to have the same defects claimed in this case.

---

[59]*Ponder v. Warren Tool Corp,* 834 F.2d 1553, 1560 (10th Cir. 1987); *Rexrode v. Am. Laundry Press Co.*, 674 F.2d 826, 829 n.9 (10th Cir. 1982).

[60]*Rexrode*, 674 F.2d at 829 n.9.

[61]*Orleman v. Jumpking, Inc.*, No. Civ. A. 99-2522-CM, 2000 WL 1114849, at *2 (D. Kan. July 11, 2000).

[62]Fed. R. Civ. P. 26(b)(1).

[63]*Lohr v. Stanley-Bostitch, Inc.*, 135 F.R.D. 162, 164 (W. D. Mich. 1991).

In light of the above, the Court will grant the Motion to Compel as to First Request No. 56.  Within **twenty (20) days** of the date of this Order, DJG shall serve an amended written response to this request and either produce the requested documents or make them available for inspection and copying.

## IV.    Bearing the Cost of Future Productions

Plaintiffs seek an order that each party should bear the costs of its own document productions  for the remainder of the case.  In the alternative, Plaintiffs request that the Court order that the reasonable costs of duplicating documents be taxed as costs at the end of the case pursuant to 28 U.S.C. § 1920.

DJG opposes Plaintiffs' request.  DJG argues that under Federal Rule of Civil Procedure 34, a producing party need not pay for photocopying.  DJG opposes Plaintiffs' alternative request in that photocopying is taxable under 28 U.S.C. § 1920 only for documents and papers "necessarily obtained for use in the case."[64]  DJG contends that many of the documents Plaintiffs have requested go beyond what is necessary for Plaintiffs to prosecute the case.

The Court finds no basis to make an exception to Rule 34 in this case.  As discussed previously, under Rule 34 a party need only make the requested documents available for inspection and copying; it need not pay photocopying expenses.[65]  The Court will therefore deny Plaintiffs' request that the Court order as to future document productions that each party must bear the cost of photocopying those documents that it produces.  The Court will also deny Plaintiffs' alternative request that the Court order that photocopying expenses be taxed as costs.  The Court's ruling will not prevent any prevailing party from filing a bill of costs at the conclusion of this action seeking to recover the costs of photocopying documents

---

[64]28 U.S.C. § 1920(4).

[65]*See* discussion in Section III.B, *supra,* and note 31.

produced.  The party seeking costs, however, must satisfy its burden to show that the documents were

"necessarily obtained for use in the case."[66]

## V.     Plaintiffs' Request for Sanctions

Plaintiffs seek to recover the costs they have incurred in connection with their Motion to Compel.

Federal Rule of Civil Procedure 37(a)(4)(C) allows a court to impose sanctions where, as here, a motion

to compel is granted in part and denied in part.  Under that rule, the court may "apportion the reasonable

expenses incurred in relation to the motion among the parties and persons in a just manner."[67]

Here, the Court has overruled many of DJG's objections, a significant number of which the Court

finds were not substantially justified.  The Court thus deems it just to allow Plaintiffs to recover a portion

of the reasonable expenses and attorney fees that they have incurred in bringing their Motion to Compel.[68]

To aid the Court is determining the proper amount of expenses, Plaintiffs' counsel shall file, within

**thirty (30) days** of the date of filing of this Order, a pleading in which Plaintiffs set forth the amount of

expenses and attorney fees that they seek to recover against DJG and an affidavit itemizing those expenses

and fees.  DJG shall have **twenty (20) days** thereafter to respond.  The Court will then issue a second

order, apportioning the expenses and fees and specifying the amount and time of payment.

---

[66]*See Case v. Unified Sch. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1258 (10th Cir. 1998) ("[T]he burden is on the prevailing [parties] to establish the amount of compensable costs and expenses to which they are entitled.  Prevailing parties necessarily assume the risks inherent in a failure to meet that burden.") (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir. 1986)).

[67]Fed. R. Civ. P. 37(a)(4)(C).

[68]In the absence of any evidence indicating that DJG itself was responsible for the sanctionable conduct, the Court will impose the sanctions against the law firms of DJG's counsel.  *See DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 693 n.56 (D. Kan. 2004); *Sonnino v. Univ. Kan. Hosp. Auth.,* 220 F.R.D. 638, 656 n.91 (D. Kan. 2004).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Discovery (doc. 39) is granted in part and denied in part as set forth herein.

**IT IS FURTHER ORDERED** that all documents required to be produced or made available for inspection and copying as a result of this Order shall be provided to Plaintiffs at their counsel's office in Kansas City, Missouri, unless the parties agree to make different arrangements for the production/inspection.

**IT IS FURTHER ORDERED** that Plaintiffs' request for sanctions is granted to the extent that the Court will allow Plaintiffs to recover a portion of the reasonable expenses and attorney fees that they have incurred in bringing their Motion to Compel, and the parties shall follow the briefing schedule set forth herein regarding the amount of sanctions to be awarded.

**IT IS FURTHER ORDERED** that Plaintiffs' request for an order pertaining to the cost of all document productions for the remainder of the case is denied.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 31st day of August 2005.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:     All counsel and *pro se* parties