DJW/bh

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**NUBIA CARDENAS, et al.,**

        **Plaintiffs,**

v.

        **CIVIL ACTION**

        **No: 04-2478-KHV-DJW**

**DOREL JUVENILE GROUP, INC., et al.,**

        **Defendants.**

### **MEMORANDUM AND ORDER**

Pending before the Court is the Motion for Protective Order (doc. 46) filed by Defendant Dorel Juvenile Group, Inc. ("DJG"). Also before the Court is (1) Plaintiffs' request for an award of attorney fees and expenses incurred in preparing a response to DJG's Motion for Protective Order (doc. 55), and (2) Plaintiffs' Motion to Strike Affidavit of Richard Glover (doc. 61).

For the reasons set forth below, the Court will grant in part and deny in part DJG's Motion for Protective Order, deny Plaintiffs' request for fees and expenses, and deny Plaintiffs' Motion to Strike.

**I.      Background Information**

This is a product liability lawsuit involving a Touriva child safety seat ("Touriva"). According to Plaintiffs, the Touriva was designed, tested, manufactured, labeled, distributed, and sold by DJG and its parent corporation, Dorel Industries, Inc.[1]

---

[1]Compl. (doc. 1), ¶¶ 4, 7 & 9.

This case arises out of an automobile crash that took place on October 12, 2002. Leeyiceth Reyna, who was then eighteen months old, was restrained in a Touriva in the rear seat of one of the automobiles involved in the crash.[2] Plaintiffs claim that as a result of the crash, Leeyiceth hit her head on one or both of the notched, rigid, unpadded and hard plastic "side wings" of the Touriva, causing her to suffer massive and permanent brain damage and other life-altering injuries.[3] Plaintiffs allege that, with a properly designed seat, Leeyiceth would not have sustained such injuries. Plaintiffs assert claims against DJG for strict liability, negligence, and violation of the Kansas Consumer Protection Act.

## II.     Plaintiffs' Motion to Strike Affidavit of Richard Glover

Before turning to the Motion for Protective Order, the Court will take up Plaintiffs' Motion to Strike. Plaintiffs seek to strike the affidavit of Richard Glover that was submitted with DJG's reply brief. Plaintiffs argue that the affidavit should be stricken because it was not filed in compliance with Federal Rule of Civil Procedure 6(d), which provides that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion . . . ."

The Court will decline to strike the affidavit. Although Rule 6(d) does not specifically address when affidavits that support a reply should be filed, courts have held that the filing of an affidavit with a reply is appropriate when the affidavit addresses matters raised in the opposition brief.[4] Such an approach fulfills

---

[2]*Id.*, ¶¶ 14-15.

[3]*Id.*, ¶ 40.

[4]*See,* e.g., *Kershner v. Norton,* No. Civ. A. 02-1887 (RMU), 2003 WL 21960605, at *1 (W.D.N.C. Mar. 15, 2005); *Haugen v. Burlington N. and Santa Fe Ry. Co.,* No. C00-1980C, 2001 WL 1852331, at *6 (W.D. Wash. Nov. 27, 2001); *McGinnis v. Southeast Anesthesia Assocs.*, 161 F.R.D. 41, 42 (W.D.N.C. 1995).

the purpose of Rule 6(d), which is to avoid unfair surprise and permit the court to resolve motions on the merits.[5]

Here, Mr. Glover's affidavit addresses matters raised in Plaintiffs' responsive brief, and it does not introduce new factual or legal issues into the matter at hand. Moreover, Plaintiffs do not assert the need to respond to any new issues raised by the affidavit nor do they seek leave to file a sur-reply to respond to the affidavit. Also, Plaintiffs do not indicate that they have been prejudiced by the affidavit having been filed with the reply.

In light of the above, the Court holds that Mr. Glover's affidavit properly supports DJG's reply and should not be stricken. Accordingly, the Court will deny Plaintiffs' Motion to Strike and will consider the affidavit in ruling on the merits of the Motion for Protective Order.

## III.   DJG's Motion for Protective Order

### A.   Facts Relating to the Motion for Protective Order

In February 2005, the parties submitted to the Court a Stipulated Protective Order, which the Court approved and caused to be filed on February 14, 2005.[6]   The Stipulated Protective Order is designed to allow Defendants to maintain the confidentiality of certain documents they produce in the course of the lawsuit. More specifically, the Stipulated Protective Order provides the following protection:

> Documents and materials to be produced by the defendants that they contend constitute, contain or depict trade secrets or other confidential research, development or commercial

---

[5]*Kershner*, 2003 WL 21960605, at *1; *McGinnis*, 161 F.R.D. at 42.

[6]*See* Stip. Prot. Order (doc. 27).

information as contemplated by Fed. R. Civ. P. 26(c)(7) may be designated as Protected Documents.[7]

The Stipulated Protective Order requires the producing party to "make a good faith determination that the material is, in fact, a trade secret or other confidential research, development or commercial information as contemplated by Fed. R. Civ. P. 26(c)(7), the dissemination of which would significantly damage the producing party's business."[8] The Stipulated Protective Order expressly excludes from protection documents "that have been produced in any other case without being subject to a Protective Order or which have been determined in any other case not to be confidential."[9] The burden of proving that a Protected Document "contains proprietary, confidential or technical information" is on the producing party.[10]

Pursuant to Paragraph 2 of the Stipulated Protective Order, if Plaintiffs' attorneys believe any designation of a "Protected Document" to be unwarranted, Plaintiffs' counsel must notify the producing party's counsel. The parties are required to confer, and if agreement cannot be reached, the producing party must "file a Motion for Protective Order pursuant to Fed. R. Civ. P. 26(c)(7) for the purpose of determining whether the challenged documents are entitled to the protection of this Order."[11]

---

[7]*Id.*, ¶ 1.

[8]*Id.*, ¶ 2.

[9]*Id.*, ¶ 3(d).

[10]*Id.*

[11]*Id.*

On March 4, 2005, DJG produced to Plaintiffs more than 20,000 pages of documents. DJG grouped those documents into twelve different categories: (1) Touriva Design Drawings, (2) Instructions/Labels, (3) Catalog Pages, (4) Touriva Model Files, (5) S. Saxton Product Development Committee Meeting Notes, (6) Product Development Committee Meeting Minutes, (7) Touriva Sales Reports, (8) Touriva Internal Testing, (9) Touriva External Testing, (10) E-mails,[12] (11) Consumer Log, Complaints, and Claim Letters, and (12) Insurance Policies.[13]

DJG did not designate any of the documents in Categories 2, 3, or 9 as "Protected." With respect to Category 8, it designated only "in-house testing" as "Protected." It designated the remaining documents, i.e., those in Categories 1, 4-7, and 10-12 as "Protected." Plaintiffs challenged DJG's designations, and after the parties conferred and were unable to resolve their differences, DJG filed the instant motion.

### B.     Duty to Confer

As a preliminary matter, Plaintiffs assert that DJG did not make a good faith effort to resolve the controversy as required by D. Kan. Rule 37.2.[14] The Court, after reviewing the briefs, finds that DJG satisfied its duty to confer under Rule 37.2 prior to filing its Motion for Protective Order. The Court

---

[12] This category of documents is identified in the transmittal letter as simply "E-mails." However, in its supporting memorandum, DJG explains that these are E-mails relating to the Touriva.

[13] *See* March 4, 2005 transmittal letter, attached as Ex. 2 to DJG's Mot. for Prot. Order (doc. 46).

[14] D. Kan. Rule 37.2 requires counsel for a party moving to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 to confer or make a reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. The term "reasonable effort to confer" means more than mailing, telefaxing, or e-mailing a single letter to the opposing party; "[i]t requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so." D. Kan. Rule 37.2

therefore declines to deny the Motion based on the alleged failure of DJG to confer with Plaintiffs' counsel. The Court will now examine the merits of DJG's Motion.

### C. Analysis

As noted above, the parties have stipulated in the Protective Order that the producing party must "make a good faith determination that the material is, in fact, a trade secret or other confidential research, development or commercial information as contemplated by Fed. R. Civ. P. 26(c)(7), the dissemination of which would significantly damaged the producing party's business."[15] The burden of proving that a "Protected Document" contains such information and is therefore entitled to protection is, as set forth in the Stipulated Protective Order[16] and in the applicable case law,[17] on the producing party.

The parties' Protective Order mirrors the language used in Federal Rule of Civil Procedure 26(c)(7). Under that rule, the Court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including "that a trade secret or other confidential research development, or commercial information not be revealed or be revealed only in a designated way."[18]

---

[15] Stip. Prot. Order (doc. 27), ¶ 2.

[16] *Id.*

[17] *See, e.g., DIRECTV v. Puccinelli,* 224 F.R.D. 677, 690 (D. Kan. 2004) (party seeking protective order pursuant to Rule 26(c)(7) has burden to show that the information sought is in fact a trade secret or other confidential research, development or commercial information and that disclosure of such information would be harmful).

[18] Fed. R. Civ. P. 26(c)(7).

In light of the above, the Court must decide (1) whether the documents DJG has designated as "Protected" are in fact trade secret or other confidential research, development or commercial information within the meaning of Fed. R. Civ. P. 26(c)(7); and (2) whether the dissemination of these documents would significantly damage DJG's business.[19] If the Court finds that these two elements have been satisfied, the Court must address Plaintiffs' assertion that some of these documents have been produced in other cases without the protection of a protective order, thereby excluding them from protection under the Stipulated Protective Order in this case.

After reviewing the parties' briefs and Richard Glover's affidavit, the Court concludes that the documents contained in Category 11, i.e., the consumer log, complaints, and claim letters do not meet the definition of trade secrets or confidential research, development or commercial information within the meaning of Rule 26(c)(7). The fact that the consumers who contacted DJG and who are identified in the Consumer Log, complaints or claim letters did not give DJG permission to distribute their information and contacts with DJG to others does not convert these documents into trade secrets or research or development materials. These documents are therefore not entitled to be designated "Protected" under the Stipulated Protective Order, and the Court will deny the Motion as to them.

With respect to the documents contained in Categories 1, 4, 5, 6, 7, 10 (Touriva Design Drawings, Touriva Model Files, S. Saxton Product Development Committee Meeting Notes, Product Development Committee Meeting Minutes, Touriva Sales Reports, and E-mails regarding the Touriva), the Court concludes that they constitute or contain trade secret information or other confidential research,

---

[19]Stip. Prot. Order (doc. 27), ¶ 2.

7

development or commercial information as those terms are used in Rule 26(c)(7).  In addition, the Court concludes that disclosure or dissemination of these document to third-parties would significantly damage DJG's business.

In addition, the Court concludes that the "in-house testing" documents contained in Category 8 qualify as trade secret information or other confidential research, development or commercial information and that their disclosure would likewise significantly damages DJG's business.  Finally, the Court holds that the insurance policies found in Category 12 qualify as commercial information as that term is used in Rule 26(c)(7) and that disclosure of those policies would cause significant harm to DJG's business.

The fact that these documents contain or constitute trade secret or other confidential research development or commercial information and that their disclosure or dissemination would be harmful to DJG's business, does not automatically entitle them to protection under the Stipulated Protective Order. The Court must consider whether any of these documents have been produced in other cases without being designated as protected under a protective order, which would except them protection under this Stipulated Protective Order.

DJG concedes that approximately 2800 pages of documents that it designated "Protected" in this case should not have been.  DJG states that its counsel recently learned that these documents were produced in the *Coyle* case without the benefit of protection under a protective order.  DJG agrees to withdraw its confidentiality designations as to these documents. Based on DJG's agreement to withdraw its designations as to these documents, the Court finds that the Motion for Protective Order is moot as to them.  DJG shall withdraw the "Protected" designation from those documents within **ten (10) days** of the date of this Order.

The Motion for Protective Order will be denied as to any other documents that DJG has designated "Protected" in this case and which DJG *knows* have been produced in other litigation without the benefit of a protective order. DJG shall likewise withdraw the "Protected" designation from these documents within **ten (10) days** of the date of this Order.

DJG acknowledges that it may have inadvertently designated other documents "Protected" in this case that should not have been, because it is impossible for DJG to know with absolute certainty what documents have been produced in earlier cases. DJG explains that its counsel of record in this case were retained by DJG less than three years ago to serve as its national counsel, after many of the productions were made to Plaintiffs' counsel in other cases. Also, many of the DJG employees who were involved in earlier productions are no longer with DJG and counsel do not have ready access to all copies of the earlier productions.

To the extent that DJG has not undertaken a thorough and diligent investigation to determine which of the "Protected" documents it has produced in this case have been produced undesignated in any other cases, DJG is directed to undertake such an investigation. In addition, Plaintiffs are directed to inform DJG of any documents it is aware of that DJG designated "Protected" in this case but that DJG has produced undesignated in any other case. Within **ten (10) days** of DJG learning that a document designated in this case is excluded from protection based on its previous unprotected production in another case, DJG shall withdraw its "Protected" designation.

The Court wishes to emphasize that the exception to the Protective Order for documents previously produced in any other case without being subject to a protective order applies only to the *specific document* previously produced. It does not apply to the *type or category of documents* previously

9

produced, as Plaintiffs appear to argue. In other words, if in another case DJG produced a one-page document consisting of a Touriva design drawing dated March 10, 1999, without designating it confidential under a protective order, only that *specific document* would be excluded from protection in this case. Other documents containing Touriva design drawings would still be entitled to "Protected" status assuming that they had not been previously produced without protection in any other cases.

## IV.    Plaintiffs' Request for Sanctions

Plaintiffs request that they be awarded the attorney fees and expenses they have incurred in preparing a response to DJG's Motion for Protective Order. Rule 26(c) provides that the provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to a motion for protective order.

Rule 37(a)(4)(c) governs the award of expenses when the motion is granted in part and denied in part, as is the case here. The Rule states that the Court may "apportion the reasonable expenses incurred in relation to the motion among the parties and person in a just manner."[20]

The Court does not find that any award of expenses would be appropriate or just here. The Court will therefore deny Plaintiffs' request for sanctions. Each party shall bear its own fees and expenses incurred in connection with DJG's Motion for Protective Order.

**IT IS THEREFORE ORDERED** that Defendant Dorel Juvenile Group, Inc.'s Motion for Protective Order (doc. 46) is granted in part and denied in part as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiffs' request for an award of attorney fees and expenses incurred in preparing a response to DJG's Motion for Protective Order (doc. 55) is denied, and each party

---

[20] Fed. R. Civ. P. 37(a)(4)(C).

shall bear its own fees and expenses incurred in connection with DJG's Motion for Protective Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Affidavit of Richard Glover (doc. 61) is denied.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 12th day of September 2005.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:     All counsel and *pro se* parties