DJW/bh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**NUBIA CARDENAS, et al.,**

               **Plaintiffs,**

                                  **CIVIL ACTION**

**v.**

                                **No:  04-2478-KHV-DJW**

**DOREL JUVENILE GROUP, INC., et al.,**

               **Defendants.**

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Second Motion to Compel Discovery (doc. 62).  Plaintiffs move to compel responses by Defendant Dorel Industries, Inc. ("DI") to Plaintiffs' First Requests for Production No. 57-71.  In addition, Plaintiffs seek to recover the fees and expenses they have incurred in connection with the filing of this motion.  For the reasons set forth below, the Court will grant the Motion to Compel.  The Court will also grant Plaintiffs' request for an award of fees and expenses.

### I.     Background Information

This is a product liability lawsuit involving a Touriva child safety seat ("Touriva").  According to Plaintiffs, the Touriva was designed, tested, manufactured, labeled, distributed, and sold by Defendant Dorel Juvenile Group, Inc. ("DJG") and its parent corporation, DI.[1]

_____

[1]Compl. (doc. 1), ¶¶ 4, 7 & 9.

This case arises out of an automobile crash that took place on October 12, 2002.  Leeyiceth Reyna, who was then eighteen months old, was restrained in a Touriva in the rear seat of one of the automobiles involved in the crash.[2]  Plaintiffs claim that as a result of the crash, Leeyiceth hit her head on one or both of the notched, rigid, unpadded and hard plastic "side wings" of the Touriva, causing her to suffer massive and permanent brain damage and other life-altering injuries.[3]  Plaintiffs allege that, with a properly designed seat, Leeyiceth would not have sustained such injuries.

Plaintiffs claim that the Touriva was defective and unreasonably dangerous for several reasons, including the following:  (1) it used a shell and side wing design that had hard, rigid plastic with sharp edges and notches in areas that would be contacted by the child's head in a side crash, and (2) the safety seat's shell and side wings were inadequately padded.[4]  Plaintiffs assert strict liability claims against DJG and DI based on alleged design, testing, manufacturing, labeling, and warning defects in the Touriva.[5]  Plaintiffs also assert claims against DJG and DI for negligence in the design, testing, manufacture, labeling, and warning of defects in the Touriva.[6]  In addition, Plaintiffs bring claims under the Kansas Consumer Protection Act against all Defendants, alleging that the sale of the Touriva was a deceptive and unconscionable act.[7]

---

[2]Id., ¶¶ 14-15.

[3]*Id.*, ¶¶ 16, 40.

[4]*Id.*, ¶ 45.

[5]*Id.*, Count I.

[6]*Id.*, Count II.

[7]*Id.*, Count V.

## II.      Analysis

### A.      DI's General Objection

Before turning to the specific responses and objections made by DI, the Court will address DI's "General Objection." DI responded to Plaintiffs' First Requests for Production with, *inter alia*, a "General Objection," which reads as follows:

> DI states that it did not design, manufacture, or distribute the Touriva child restraint system at issue in this case. DI further states that virtually all, if not all, documents in its possession relating to that product would have been sent to it by Dorel Juvenile Group, Inc. for informational purposes only, and that it has no central files specifically relating to that product, making a search for such unduly burdensome in light of their limited usefulness."

Plaintiffs argue that this "General Objection" is meritless, relying on *Swackhammer v. Sprint Corporation*[8] and *Sonnino v. University of Kansas*.[9] Plaintiffs, however, have misconstrued the Court's holding in those cases.   In both cases, the Court found the general objections meritless on their face because in each the party stated that it objected to the discovery request "to the extent that . . . ."[10] The Court noted that such objections are based on "mere hypothetical or contingent possibilities, where the objecting party makes no meaningful effort to show the application of any such theoretical objection to any request for discovery."[11]

---

[8]225 F.R.D. 658, 660-61 (D. Kan. 2005).

[9]221 F.R.D. 661, 666-67 (D. Kan. 2004).

[10]*Swackhammer*, 225 F.R.D. at 661-62; *Sonnino*, 221 F.R.D. at 671.

[11]*Swackhammer*, 225 F.R.D. at 661-662 (quoting *Sonnino*, 221 F.R.D. at 671).

Here, DI does not use the inappropriate phrase "to the extent that" in its General Objection. Consequently, the Court does not find DI's General Objection to be meritless on its face.  The Court will therefore proceed to examine the merits of the "General Objection."

As a threshold matter, it is unclear whether DI is attempting to assert one objection or two in its "General Objection."  It is apparent that  DI asserts an undue burden objection in the second sentence of its "General Objection."  It states that it has no central files relating to the Touriva, rendering such a search unduly burdensome.  As the party asserting this objection, Defendant has the burden to show not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.[12]  This burden typically imposes an obligation on the objecting party to provide an affidavit or other evidentiary proof of the time or expense involved.[13]

Here, DI submits no affidavit or evidentiary proof of the burden involved in responding to these requests.  In fact, DI fails to address this General Objection at all in its response to the Motion to Compel. While DI does object to all but one of the requests as being facially improper because they use omnibus terms such "all documents pertaining to" or "all documents which discuss, reflect, pertain or relate to,"[14] that is a substantively different objection than the General Objection of undue burden.

---

[12]*Swackhammer,* 225 F.R.D. at 666; *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 674 (D. Kan. 2003).

[13]*Swackhammer*, 225 F.R.D. at 666; *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004).

[14]These objections are discussed below with respect to each individual request.

As DI totally fails to address this General Objection of undue burden in its response to the Motion to Compel, the Court finds it to be abandoned.[15]  Even if DI did not intend to abandon this General Objection, the Court would nevertheless overrule it as wholly unsupported.[16]

The Court will now turn to the first sentence of DI's General Objection, which states that DI "did not design, manufacture, or distribute the Touriva child restraint system at issue."  It is unclear whether DI intends this sentence to be a separate and distinct objection.  Certainly it is not phrased as an objection, i.e., as a relevance, overbreadth, or "not reasonably calculated to lead to the discovery of admissible evidence" objection.  Also, DI does not satisfactorily explain in its response to the Motion to Compel how its assertion that it did not design, manufacture, or distribute the Touriva relieves it of the obligation to produce any responsive documents that may be in its possession, custody or control.

As this Court has previously held, a general objection does not fulfill a party's burden to explain its objections; the objecting party is required to substantiate its general objection.[17]   To do so, the party

_____

[15]When ruling upon a motion to compel, the Court will consider only those objections that have been (1) timely asserted, *and* (2) relied up in response to the motion to compel.  *Sonnino,* 221 F.R.D. at 670; *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999). Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned.  *Sonnino*, 221 F.R.D. at 670.

[16]*Sonnino*, 221 F.R.D. at 670-71 ("[T]he objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production . . . is objectionable.  By failing to address . . . objections in response to a motion to compel, a party fails to meet its burden to support its objections.  The Court is then left without any basis to determine whether the objections are valid and applicable in light of the particular circumstances of the case.").  *See also Swackhammer*, 225 F.R.D. at 666 (overruling undue burden objection where party failed to submit any affidavit or evidentiary support for the objection).

[17]*Allianz Ins. v. Surface Specialties, Inc*., No. Civ. A. 03-2470-CM-DJW, 2005 WL 44534,
(continued...)

must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is irrelevant, overly broad, burdensome, or oppressive by submitting affidavits or offering evidence or some type of support for each of its objections.[18]

To the extent DI is attempting to assert a general objection based on its contention that it did not design, manufacture, or distribute the Touriva, the Court finds that DI has failed to adequately support its objection. DI fails to show how that "fact" relieves it of the obligation to produce any of these documents that are in its possession, custody or control.[19] The Court will therefore overrule it. The Court will now proceed to examine the objections asserted in response to each particular request at issue in Plaintiffs' Motion to Compel.

### B.    First Requests No. 57- 58 and 60-64

These requests relate to certain Maxi-Cosi car seats and the Maxi-Cosi Side Protection System. Maxi-Cosi is one of DI's European subsidies.

First Request No. 57 asks DI to produce all documents "pertaining to the design of the Maxi-Cosi 'Side Protection System' for CRD's."[20] First Request No. 58 asks DI to produce all documents that

---

[17](...continued)
at *2 (D. Kan. Jan. 7, 2005); *Employers Commercial Union Ins. Co. of Am. v. Browning-Ferris Indus. of Kan. City, Inc*., Civ. A. No. 91-2161-JCL, 1993 WL 210012, at *2 (D. Kan. Apr. 5, 1993).

[18]*Allianz,* 2005 WL 44534, at *2; *Employers Commercial*, 1993 WL 210012, at *2.

[19]Fed. R. Civ. P. 34 requires a party upon whom a Rule 34 request is served to produce or make available for inspection and copying those documents requested  "which are in the possession, custody or control" of that party.

[20]"CRD" is an acronym for the term "child restraint device."

pertain to the EPS foam inserts used in the plastic shell of the Maxi-Cosi "Priori" car seat currently being distributed by Dorel Juvenile Group Europe.  First Request No. 60 asks DI to produce all documents "pertaining to any side impact testing of any CRD equipped with the Maxi-Cosi 'Side Protection System.'" Finally, First Requests No. 61-64 ask DI to produce all documents pertaining to the design, testing, cost, and use of EPS in various models of the Maxi-Cosi "Priori" and Maxi-Cosi "Rodi" car seats.

DI objected to these requests on the basis that each is "irrelevant, vague, overbroad, and unduly burdensome, particularly due to its use of the word 'pertaining.'"  DI also objected "to the extent [each request] seeks documents unrelated to the claims or particular product at issue in the litigation and to its unreasonable time duration."

　　　　1.　　Vague, overbroad, and undue burden "facial" objections based on Plaintiffs' use of the term "pertaining to"

DI contends these requests are facially vague, overly broad, and unduly burdensome because they use the omnibus term "pertaining to."   DI correctly observes that this Court has held on several occasions that a document request may be vague, or overly broad and unduly burdensome on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning."[21]  That rule, however, applies only when the omnibus term is used with respect to a *general category or broad range of documents.*[22]

As this Court has previously noted, a request may be overly broad or unduly burdensome on its face "if it is couched in such broad language as to make arduous the task of deciding which of numerous

---

[21]*See, e.g.*, *Sonnino,* 221 F.R.D.  at 667; *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003); *Employers Commercial*, 1993 WL 210012, at *3.

[22]*Sonnino*, 221 F.R.D. at 667-68; *Aikens,* 217 F.R.D. at 538.

documents may conceivably fall within its scope."[23]   A request seeking documents "pertaining to" or "concerning" a broad range of items "requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request."[24]   When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face.[25]

Applying these standards, the Court finds that these requests are not so all-encompassing as to make them vague, or overly broad and unduly burdensome on their face.  The omnibus term "pertaining to" modifies the design of a particular Side Protection System and the side impact testing of a certain group of child restraint devices.  The term does not modify a large number or general category of things or events.  Thus, the requests are not objectionable on this basis.

---

[23]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ. A. 94-2395-GTV, 1995 WL 625962, at *6 (D. Kan. Oct. 5, 1995).

[24]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ. A. 94-2395-GTV, 1995 WL 18759 (D. Kan. Jan. 17, 1995).  *Accord Aikens,* 217 F.R.D. at 538.

[25]*Sonnino*, 221 F.R.D. at 667-68.  For example, this Court has held a request overbroad and unduly burdensome on its face where it sought all documents "regarding" or "relating to" to the lawsuit and the eleven plaintiffs and their EEOC charges.  *See Aikens*, 217 F.R.D. at 538.  This Court also held a request in a breach of contract suit overly broad on its face where it sought documents that referred or related to any alleged or actual breaches of the contract at issue, the plaintiff's reasons for breaching the contract, and communications between the defendant and any other person regarding termination of the contract.  *See W. Res. v. Union Pac. R.R.*, No. 00-2043-CM, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001).  Similarly, this Court held a request facially overbroad where it requested "all documents concerning plaintiff."  *See Pulsecard, Inc. v. Discover Card Servs.*, No. 94-2304-EEO, 1996 WL 397567, at *6 (D. Kan. July 11, 1996).

2.       *Relevance and overbreadth*

DI also objects to these requests on the basis of relevance and because they seek documents unrelated to Plaintiffs' claims and "the particular product at issue," i.e., the Touriva. Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[26] Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[27] Consequently, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[28]

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[29]  Conversely, when the relevancy

---

[26]Fed. R. Civ. P. 26(b)(1).

[27]*Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D. Kan. 2004); *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).

[28]*Owens*, 221 F.R.D. at 652; *Sheldon*, 204 F.R.D. at 689-70 (citations omitted).

[29]*Owens*, 221 F.R.D. at 652; *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[30]

The relevance of the documents requested in these requests is not apparent from the face of the requests.  Plaintiffs, however, explain that DI's website states that DI markets car seats under various brands, including "Maxi-Cosi."[31]  According to Plaintiffs, the Maxi-Cosi website contains a section on "Side Protection System" which states:  (1) to optimally protect a child in a car seat it is important that the child's head be cushioned as much possible and that forward or sideways movement of the head be kept to a minium; (2) keeping such head movement to a minium is only possible if the shock is absorbed directly by means of shock absorbing components; and (3) the "Side Protection System" offers this extra protection and dramatically reduces the risk of head and neck injury.

Plaintiffs go on to explain that the Maxi-Cosi "Priori" and the Maxi-Cosi "Rodi" are two types of car seats similar to the Touriva.  But unlike the Touriva, they contain extensive amounts of side impact protection and are marketed as containing the "Side Protection System," which as discussed above, Maxi-Cosi claims dramatically reduces the risk of head and neck injury.

Plaintiffs argue that these requests seek very relevant information; they will reveal what DI knows about the design of the Priori and its Side Protection System and what DI knows about side impact protection in general, when it learned that information, how it learned that information, how it tested the Priori to be able to make the claim of enhanced side impact protection, and how much the enhanced

_____

[30]*Owens*, 221 F.R.D. at 652; *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000).

[31]As noted above, Maxi-Cosi is one of DI's European subsidiaries.

protection costs, all of which are very much at issue in this case.  Plaintiffs also argue that these documents

may reveal whether it was feasible for the Touriva to have used an EPS insert similar to that used on the

side wings of the Maxi Priori.  Plaintiff argues that whether DI could have provided such side impact

protection in the Touriva goes to the heart of Plaintiffs' claims that the Touriva was defective, particularly

due to the absence of any side impact protection, and that DI was negligent in the design, testing, and

warning of defects in the Touriva.

DI counters that the request does not seek relevant information because the Touriva and Maxi

Priori are different types of child restraint systems.  According to DI, the Priori is a forward-facing booster

seat for children older than twelve months and heavier than twenty pounds. The Touriva, on the other hand,

is a convertible child car seat designed for use by newborns and by newborns and young infants in a rear-

facing orientation and by toddlers in a forward-facing orientation.   The Priori is no longer sold in the United

States but is sold in Europe, where it retails for $200.  The Touriva is sold in the United States and retails

for about $55.  The Priori's shell is designed to meet European testing standards, while the Touriva's shell

is designed to comply with the different performance standards of the United States.

DI argues that these differences between the Touriva and the Maxi-Priori render information about

the Priori irrelevant to this case.  Further, DI argues that the only issue in this case is whether the Touriva's

"molded insert" rendered the Touriva defective.  The issue is not whether the Priori or any other child

restraints may have been safer.

DI argues that Plaintiffs have deceptively changed the theory of the alleged defect to justify their

irrelevant requests for discovery relating to side impact protection.  According to DI, Plaintiffs' only claim

is that Touriva was defective because of the inclusion of a non-functional molded insert with hard, sharp edges.

The Court disagrees.  It is abundantly clear to the Court that  Plaintiffs' Complaint is *not* limited to the issue of whether the Touriva's molded insert was defective.  The Complaint alleges that the Touriva was defectively designed due to, *inter alia*, the lack of adequate lateral impact protection and that DI and DJG failed to test for lateral impacts and to warn that the Touriva provided no lateral impact protection.[32] For example, paragraph 18 of the Complaint alleges that when DI and DJG initially conceived the Touriva, they knew it was critically important that child safety seats like the Touriva provide protection for occupants in side crashes and had obtained U.S. Patents recognizing that a child seat must protect from side impacts.[33]

In paragraph 19 of the Complaint, Plaintiffs allege that DI and DJG failed to conduct side impact testing in the Touriva.[34]  Also, in paragraph 45, Plaintiffs allege that DI and DJ sold the subject Touriva in a defective condition that was unreasonably dangerous because, *inter alia*, the Touriva shell and side wings were inadequately padded.[35]

After carefully considering the parties' arguments, the Court finds that First Requests No. 57-58 and 60-64 seek documents relevant to Plaintiffs' claims and are reasonably calculated to the lead to the discovery of admissible evidence.  The law in Kansas is clear that "evidence of a feasible alternative design

---

[32]*See* Compl. (doc. 1),  ¶¶ 18-20, 30-39, 44, and 53.

[33]*Id.*, ¶ 18.

[34]*Id.*, ¶ 19.

[35]*Id*., ¶ 45.

is admissible in design defect cases."[36]  Also, the Kansas Supreme Court has held that "one of the most significant factors" in determining whether a manufacturer has exercised the proper care and skill is "whether others in the field are using the same design, or a safer design."[37]  In light of these principles, the Court finds that these requests are calculated to lead to the discovery of evidence regarding whether the Priori provided lateral impact protection that was a safer, feasible alternative design, a design that could have been used in the Touriva.

Finally, the Court rejects DI's argument that Plaintiffs do not need any additional discovery concerning the Priori because Plaintiffs already have an exemplar of it which would allow their experts to examine it and compare it to the Touriva.  DI's position is unsupported by any authority and is contrary to Federal Rule of Civil Procedure 26(b)'s mandate that parties may obtain discovery regarding any matter that is relevant to the claim or defense of any party.

In light of the above, the Court overrules DI's objections that these requests are irrelevant and overly broad.

### 3.      Undue burden and vagueness

In its initial responses to these requests, DI objected to them as unduly burdensome and vague. DI, however, does not discuss those objections in its response to the Motion to Compel other than in connection with its discussion of its facial objection to Plaintiffs' use of the term "pertaining to."  The Court

---

[36]*Jenkins v Amchem Prods., Inc*., 256 Kan. 602, 636, 886 P.2d 869 (1994).  *See also Siruta v. Hesston Corp*., 232 Kan 654, 667, 659 P.2d 799 (1983) ("In products liability cases, the plaintiff in sustaining its burden to prove that a product is defectively designed may properly show the feasibility of a safer design.").

[37]*Garst v. Gen. Motors Corp,* 207 Kan. 2, 21, 484 P.2d 47 (1971).

has already overruled that facial objection.  (*See* section II.B.1, supra.)  To the extent DI intended to assert

objections based on undue burden and vagueness other than the facial objection made to Plaintiffs' use of

the term "pertaining to," the Court finds that DI abandoned those objections by not reasserting or discussing

them in its opposition to the Motion to Compel.[38]  Even if DI did not intend to abandon them the Court

would nevertheless overrule them as unsupported.

### 4.      Unreasonable time period

DI also objected to the "unreasonable time duration" of these requests when it initially responded

to them.  DI, however, did not reassert or discuss that objection in its response to the Motion to Compel.

The Court therefore deems it abandoned and/or wholly unsupported.

### 5.      Conclusion and summary of ruling as to First Requests No. 57-58 and 60-64

To summarize, the Court overrules DI's objections to First Requests No. 57-58 and 60-64.  The

Court will therefore grant the Motion to Compel as to these requests.  Within **twenty (20) days** of the date

of this Order, DI shall serve an amended written response to each of these requests and either produce the

requested documents or make them available for inspection and copying by Plaintiffs.

### C.      First Request No. 59

This request asks DI to produce any "head drop" testing it has conducted "using part 572 heads

on EPS or other energy absorbing material for the purpose of assessing or determining its suitability for use

in your child restraints."  DI objected on the basis that the request seeks irrelevant documents.  DI,

---

[38]*See  Sonnino,* 221 F.R.D. at 670 (objections initially raised but not relied upon in response to motion to compel will be deemed abandoned); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999) (same).

however, qualified its response by stating that, without waiving this objection, it had no documents responsive to it.

In its response to the Motion to Compel, DI fails to address or reassert this objection. In fact, DI fails to address this request in any manner. The Court therefore finds that this objection has been abandoned. Within **twenty (20) days** of the date of this Order, DI shall serve an amended response to this request and shall either (1) produce all responsive documents or make them available for inspection and copying by Plaintiffs, or (2) confirm that it has no documents in its custody, control or possession that are responsive to this request.

### D.      First Requests No. 65-69

These requests relate to certain Bebe-Confort car seats. Bebe Confort is another European subsidiary of DI.

These requests are substantially similar to the requests Plaintiffs propounded regarding the Maxi-Cosi car seats. First Request No. 65 asks DI to produce all documents "pertaining to the design of the side wings on the Bebe Confort 'Safe Side' system for CRD's." First Request No. 66 asks DI to produce all documents "pertaining to any side impact testing of any CRD equipped with the Bebe Confort "Safe Side" System. First Requests No. 67-69 ask DI to produce all documents "pertaining to the design of the side wings" on the Bebe Confort Iseos Safe Side, Bebe Confort Trianos Safe Side, and Bebe Confort Hipsos Safe Side.

DI responded to these requests in the same manner that it responded to the requests regarding the Maxi-Cosi car seats discussed above in Part II.B. That is, it objected on the basis that each is "irrelevant, vague, overbroad, and unduly burdensome, particularly due to its use of the word 'pertaining.'" DI also

objected "to the extent [each request] seeks documents unrelated to the claims or particular product at issue in the litigation and to its unreasonable time duration."

        *1.      Relevance and overbreadth*

DI objects to these requests on the basis of relevance and because they seek documents unrelated to Plaintiffs' claims and "the particular product at issue," i.e., the Touriva.

The relevance of the documents requested in these requests is not apparent from the face of the requests. Plaintiffs, however, explain that according to DI's website, DI markets car seats not only under the brand "Maxi-Cosi," but also the brand "Bebe Confort." Plaintiffs further explain that the Bebe-Confort website contains a section regarding the "Safe Side," which states:

> Safe Side is the side protection featured on Bebe Confort Elios Safe Side, Iseos Safe Side and Hipsos Safe Side car seats. Thanks to absorbent reinforcement (plastic/polystyrene frame) around the headrest, the child's head is kept inside the seat in the event of side impact.
>
> Today, side protection is not compulsory . . . .
>
> However, out of a concern to constantly improve the level of safety of its car seats, Bebe Confort has decided to make them Safe Side.[39]

In addition, Plaintiffs assert that in November 2004, after the lawsuit was filed, a Bebe Confort safety seat catalog could be found on-line, which stated:

> To ensure even higher levels of child safety, Bebe Confort exceeds the requirements of standards with its "Safe Side" seats.
>
> Safe Side, or side protection, offers support in the event of side impact. Thanks to more robust supports on either side of the head, the child has better protections for a safer journey. . . .

---

[39]Pls.' Mem. in Supp. of Mot. to Compel Disc. (doc. 63) at p. 5.

With a view to constantly improving safety, Bebe Confort goes beyond the provisions laid down by standards and provides a solution for this type of impact . . . additional protection that today is not compulsory but is a real plus in terms of safety. [40]

Plaintiffs make the same arguments about the relevance of these requests as it did with respect to the requests seeking production of documents regarding the Maxi-Cosi Priori and its Side Protection System. DI makes similar counterarguments.

For the same reasons discussed above with respect to First Requests No. No. 57- 58 and 60-64, the Court overrules DI's relevance objections to First Requests No. 65-69. The Court finds that the discovery sought is relevant to Plaintiffs' claims and is reasonably calculated to the lead to the discovery of admissible evidence.

### 2.    DI's other objections

The Court overrules DI's remaining objections to First Requests No. 65-69, for the same reasons discussed above with respect to First Requests No. 57-58 and 60-64.

### 3.    Conclusion and summary of ruling as to First Requests No. 65-69

The Court overrules DI's objections to First Requests No. 65-69, and the Motion to Compel will be granted as to these requests. Within **twenty (20) days** of the date of this Order, DI shall serve amended written responses to these requests and either produce the requested documents or make them available for inspection and copying by Plaintiffs.

---

[40]*Id*. at p. 5-6.

### E.        First Requests No. 70 and 71

First Request No. 70 seeks:

[A]ll documents in your possession, custody or control generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, by any of your affiliated or subsidiary companies, which discuss, reflect, pertain or relate to the design or development of the use of energy absorbing material (including, e.g., EPS, foam) on the side wings of child restraint devices.

First Request No. 71 seeks:

[A]ll documents in your possession, custody or control generated from 1993 through today, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to any "cost/benefit analysis" involving a comparison between child restraints that contain energy absorbing material on the side wings with child restraints that do not have any such material on the side wings.

DI responded identically to both requests.  It objected on the grounds that each request is "irrelevant, vague, overbroad and unduly burdensome, particularly due to its use of the phrase 'discuss, reflect, pertain or relate.'"  It also objected "to the extent it seeks documents unrelated to the claims or particular products at issue in the litigation and to its unreasonable time duration."

DI's discussion of these two requests in its response to the Motion to Compel is limited.  DI asserts in its response that the requests are facially improper because they use the omnibus terms "discuss, reflect, pertain or relate to."  DI also asserts that they are irrelevant and not calculated to lead to the discovery of admissible evidence because:  "[T]he documents sought in [these requests and others] 'pertain to' entirely different products that are manufactured and sold outside of the U.S.  These foreign products are not comparable to the Touriva and they are subject to different government regulations."[41]

---

[41]DI's Resp. to Pls.' Mot. to Compel Disc. (doc. 69) at p.6.

For the same reasons discussed above, the Court does not find these requests to be facially overbroad, unduly burdensome, or vague because they use the omnibus terms "discuss, reflect, pertain or relate to." The Court finds these requests to be drawn narrowly enough to allow DI to respond without having to engage in "mental gymnastics." The Court finds that the omnibus phrases used in these requests modify a sufficiently specific type of information, i.e., the design or development of energy absorbing material on the side wings of child restraints devices.

The Court also finds these requests to be relevant to Plaintiffs' claims and reasonably calculated to lead to the discovery of admissible evidence. The discovery sought goes to DI's knowledge of the design and use of energy absorbing material on the side wings of car seats and the costs and benefits associated with such materials. The discovery sought also goes to the issue of whether a safer, alternative design was feasible and DI's knowledge of such feasibility. These issues are directly relevant to Plaintiffs' claims that the Touriva was defective due to the absence of any side impact protection, and that DI was negligent in the design, testing, and warning of defects in the Touriva. The Court will therefore overrule DI's objections that these requests seek irrelevant documents and are not calculated to lead to the discovery of admissible evidence.

To the extent DI asserted additional objections in its initial responses to these requests, the Court finds that DI has abandoned them by failing to reassert or address them in their response to the Motion to Compel. To the extent DI did not intend to abandon them, the Court would nevertheless overrule them as unsupported.

In sum, the Court overrules DI's objections to First Requests No. 70 and 71, and will grant the Motion to Compel as to them. DI shall, within **twenty (20) days** of the date of this Order, serve an

amended written response to each of these requests and either produce the requested documents or make them available for inspection and copying by Plaintiffs.

### III.   Plaintiffs' Request for Rule 37 Expenses

Plaintiffs seek to recover the expenses and attorney fees they have incurred in connection with their Motion to Compel.  Federal Rule of Civil Procedure 37(a)(4) governs the imposition of expenses in connection with motions to compel.  Subsection (a)(4)(A) provides that when a motion to compel is granted, "the court *shall,* after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the court finds that . . . the opposing party's . . . response or objection was substantially justified, or that other circumstances make an award of expenses unjust."[42]

Here, the Court has granted Plaintiffs' Motion to Compel in its entirety and overruled DI's objections, a significant number of which the Court finds were not substantially justified.  The Court thus deems it appropriate to allow Plaintiffs to recover the reasonable expenses and attorney fees they have incurred in bringing their Motion to Compel.[43]

_____

[42]Fed. R. Civ. P. 37(a)(4)(A) (emphasis added).  The Court notes that a hearing regarding the award of expenses is not necessary, as the Court may consider the issue "on written submissions." *Kan. Wastewater, Inc. v. Alliant Techsytems, Inc.*, 217 F.R.D. 525, 532 n.26 (citing *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000); Fed. R.Civ. P. 37(a)(4)).  Here, the parties have satisfied the "written submission" requirement by addressing the expenses issue in their briefing on the Motion to Compel.

[43]In the absence of any evidence indicating that DI itself was responsible for the responses and objections at issue in the Motion to Compel, the Court will impose liability for payment of the expenses and
(continued...)

To aid the Court in determining the proper amount of expenses, Plaintiffs' counsel shall file, within **thirty (30) days** of the date of filing of this Order, a pleading in which Plaintiffs set forth the amount of expenses and attorney fees they seek to recover against DI and an affidavit itemizing those expenses and fees.  DI shall have **twenty (20) days** thereafter to respond.  The Court will then issue a second order, specifying the amount of the award and setting the time of payment.

**IT IS THEREFORE ORDERED** that Plaintiffs' Second Motion to Compel Discovery (doc. 62) is granted as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiffs' Rule 37(a)(4) request for expenses is granted, and the parties shall follow the briefing schedule set forth herein regarding the amount of expenses and fees to be awarded.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 13th day of October 2005.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:     All counsel and *pro se* parties

---

[43](...continued)
fees against the law firms of DI's counsel.  *See DIRECTV, Inc. v. Puccinelli,* 224 F.R.D. 677, 693 n.56 (D. Kan. 2004) (law firm of counsel required to pay the expenses and fees incurred in connection with filing of motion to compel); *Kan. Wastewater,* 217 F.R.D. at 532 n.28 (same).