DJW/bh

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**NUBIA CARDENAS, et al.,**

        **Plaintiffs,**

                              **CIVIL ACTION**

**v.**

                              **No:  04-2478-KHV-DJW**

**DOREL JUVENILE GROUP, INC., et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Motion for Sanctions (doc. 139).  Plaintiffs seek sanctions against Dorel Juvenile Group, Inc. ("DJG") pursuant to Federal Rule of Civil Procedure 37, alleging that DJG attempted to conceal a crucial and damaging document known as "CEA 416," failed to truthfully respond to a request for production of documents, failed to supplement its response to a document request that it knew was false, made a false statement to the Court in an attempt to avoid the entry of an order compelling discovery, and defied the Court's order compelling discovery.

On April 20, 2006, after Plaintiffs' Motion for Sanctions was fully briefed, Plaintiffs filed a supplemental brief, asserting that their counsel discovered on eBay two Touriva child safety seats ("Tourivas") that are considerably different than the one they claim injured Leeyiceth Reyna.  Plaintiffs allege that DJG concealed the redesigned Touriva from Plaintiffs and served false responses to Plaintiffs' discovery requests and intentionally failed to supplement those responses.[1]

---

[1]The Court allowed the parties to file various supplemental briefs relating to these new allegations.
(continued...)

Plaintiffs ask the Court to strike DJG's Answer and preclude DJG from pursuing any of its affirmative defenses in this matter, which would effectively result in the entry of default judgment against DJG.[2] In the alternative, Plaintiffs seek the following:

(1) A finding of fact that the "recess" in the Touriva at issue was a defective and unreasonably dangerous condition that caused or contributed to cause all of    Leeyiceth Reyna's injuries.

(2) A finding of fact, that can be made known to the jury, that DJG defied a Court Order and concealed CEA 416; and

(3) A finding that CEA 416 and all other documents related to the Touriva's "recess" be deemed admissible at trial.

Plaintiffs also request that they be awarded the attorney fees and expenses they have incurred in connection with the filing of their motion for sanctions.

For the reasons set forth below, the Court will deny the motion for sanctions, except to the extent Plaintiffs will be allowed to recover their attorney fees and expenses.

## I. Background Information

### A. Plaintiffs' Causes of Action

This is a product liability lawsuit involving a Touriva child safety seat. According to Plaintiffs, the Touriva was designed, tested, manufactured, labeled, distributed, and sold by DJG and its parent corporation, Defendant Dorel Industries, Inc. ("DI").

---

[1](...continued)
*See* doc. 163, 168, 175, and 176.

[2]In their response to the Motion for Sanctions, DJG construes Plaintiffs' Motion as requesting the entry of default judgment. In addition, Plaintiffs make it clear in their reply brief that they are seeking default judgment against DJG.

The case arises out of an automobile crash that took place on October 12, 2002. Leeyiceth Reyna, who was then eighteen months old, was in a Touriva in the rear seat of one of the automobiles involved in the crash. Plaintiffs claim that as a result of the crash, Leeyiceth hit her head on one or both of the notched, rigid, unpadded and hard plastic "side wings" of the Touriva, causing her to suffer massive and permanent brain damage and other life-altering injuries. Plaintiffs assert that, with a properly designed seat, Leeyiceth would not have sustained such injuries.

Plaintiffs assert strict liability claims against DJG and DI based on alleged design, testing, manufacturing, labeling, and warning defects in the Touriva. Plaintiffs also assert claims against DJG and DI for negligence in the design, testing, manufacture, labeling, and warning of defects in the Touriva. In addition, Plaintiffs bring claims under the Kansas Consumer Protection Act against all Defendants, alleging that the sale of the Touriva was a deceptive and unconscionable act.

### B. DJG's Belated Production of CEA 416

On March 7, 2005, Plaintiffs served their First Requests for Production on DJG, including First Request No. 13, which asked DJG to produce "[a]ny CEA that applies or applied in any way for the Touriva at any time since it was initially conceived." DJG objected to the request and did not produce any responsive documents. Plaintiffs filed a motion to compel (doc. 39) on May 2, 2005, seeking, *inter alia*, to compel DJG to produce these documents. Plaintiffs explained in their motion to compel that "CEA" is an acronym for a "Capital Expenditure Authorization" and is a DJG form which provides a description and justification for a design modification made during the life of a product. Plaintiffs further explained that a CEA for the Touriva would reveal when design changes were considered and would identify the DJG employees who approved each major design change to the Touriva.

On May 13, 2005, DJG wrote Plaintiffs' counsel and stated that he was prepared to produce "[t]he Capital Expenditure Authorization you requested."[3] Three days later, DJG responded to Plaintiffs' motion to compel (doc. 58) and, without reasserting its initial objections and without any elaboration, stated: "DJG has produced this document."[4] Plaintiffs filed a reply brief, indicating that DJG had never produced the document, and had only offered to make it available for inspection in Chicago or to ship it to Plaintiffs' counsel's office at Plaintiffs' expense.

On August 31, 2005, the Court granted in part the motion to compel (*see* doc. 86). The Court ordered DJG to produce or make available for inspection and copying numerous documents, including the document that DJG had indicated it had already produced in response to First Request No. 13.

DJG served an amended response to First Request No. 13 on October 20, 2005. It reasserted its initial objections and then stated: "[A]ll responsive documents that DJG has located have been produced as Bates Numbers COS0002-7; COS0014-21; CARDENAS18183-190; 23896-23924." These documents were two CEAs pertaining to the initial development of three Touriva molds. CEA 416, which is the document at issue here, was not among the documents produced.

Based on DJG's amended response, Plaintiffs presumed that all documents responsive to First Request No. 13 had been produced. Several weeks later, however, Plaintiffs discovered an unnumbered document contained in a CD of documents DJG had produced in response to other document requests. This document was an internal DJG e-mail from Larry Rumph to Bill Horton dated September 24, 2002

---

[3]Decl. of Walter Greenough, attached as Ex. 2 to DJG's Resp. to Pls.' Mot. for Sanctions (doc. 144).

[4]DJG's Resp. to Mot. to Compel (doc. 58) at p. 8.

with the subject heading "Touriva Shell Modifications."[5] The e-mail stated: "The CEA was signed today for the modification of the seat shells to remove the barrier recess. The project number is B14-416-201. Total amount $50,000."[6] As DJG had never produced a copy of this CEA, Plaintiffs served on December 21, 2005 a Fourth Request for Production specifically requesting this particular CEA, along with all documents that accompanied or referenced the CEA as it was circulated for approval.

On January 19, 2006, DJG served a written response to Plaintiffs' Fourth Request, stating: "DJG is searching for additional responsive documents." On January 24, 2006, Plaintiffs' counsel sent DJG's counsel a letter asking him to either produce the requested documents or state that none exist. DJG's counsel indicated he would try to produce something soon. On January 30, 2005, Plaintiffs received from DJG five CDs containing numerous videos and more than 1,300 pages of documents. One of those documents was the CEA at issue, i.e., CEA 416.

CEA 416 contained the heading "Description & Justification," under which it stated:

Modification of the Touriva Car Seat Shell Molds

Request for capital to modify the three Touriva Convertible Car Seat shell molds to remove the recess for the overhead barrier shields. In use without the barrier, *this recess is a child safety concern* as well as an aesthetic issue.

The estimated cost per mold to remove this recess is $15,000 and there will be some incidental mold repair issues corrected during this process.

Total capital required = $50,000.00.[7]

---

[5]*See* Ex. 2 attached to Pls.' Mem. in Supp. of Mot. for Sanctions (doc. 140).

[6]*Id.*

[7]*See* Ex. 1 attached to Pls.' Mem. in Supp. of Mot. for Sanctions (doc. 140) (emphasis added).

CEA 416 was dated September 24, 2002 and signed by its "Originator" Bill Holton, who was a Senior Project Engineer for DJG. The CEA indicated that the expenditure was "approved" by DJG's Vice-President Operations and at least one other DJG employee.

Plaintiffs argue that CEA 416 is "key and crucial evidence" which reveals that less than one month before Leeyiceth Reyna's accident, a DJG engineer requested approval to modify the Touriva to address a "child safety concern." According to Plaintiffs, this establishes that DJG was on notice that the Touriva used by Leeyiceth was defective.

Plaintiffs claim they have been prejudiced by the belated discovery of CEA 416. They argue that because CEA 416 was discovered only two weeks before Plaintiffs' expert witness disclosures were due, their experts were required to re-analyze the evidence and reformulate their opinions, causing Plaintiffs to incur additional expenses. Plaintiffs also contend that DJG's actions leave Plaintiffs unsure as to whether other crucial documents have been concealed and unable to rely on DJG's representations that it has produced all other responsive documents. Furthermore, Plaintiffs contend they can no longer rely on DJG to fairly redact materials that it claims are irrelevant. Finally, Plaintiffs assert they have been prejudiced because the belated discovery of CEA 416 opens up an entire new area of the case that needs to be explored. If Plaintiffs make the decision to seek an extension of time on their expert disclosures and discovery, the trial will need to be moved. Plaintiffs contend that such delay and added expense are clearly prejudicial.

Plaintiffs contend that DJG acted deliberately and that such deliberate wrongdoing warrants severe sanctions. According to Plaintiffs, the sequence of events reveals that DJG deliberately concealed a crucial piece of highly relevant evidence and that DJG knew CEA 416 was directly responsive to Plaintiffs' First

6

Request No. 13. Plaintiffs explain that CEA 416 was a new and different CEA than the one DJG had expressly represented to the Court on May 16, 2005 had already produced, and they contend that DJG misrepresented to Plaintiffs and the Court that it had already produced all documents responsive to First Request No. 13. Finally, Plaintiffs maintain that DJG flouted the Court's August 31, 2005 Order granting Plaintiffs' motion to compel and directing DJG to produce all documents responsive to First Request No. 13 by failing to produce it with its amended October 20, 2005 response to the First Requests for Production. Plaintiffs assert that but for their fortuitous finding of the September 24, 2002 e-mail which referenced CEA 416, they never would have discovered the document, and DJG would have continued to conceal it, despite an outstanding request requiring its production.

In response to Plaintiffs' Motion for Sanctions, DJG explains that it did not initially produce CEA 416 in response to Plaintiffs' First Request No. 13 because DJG's outside counsel and in-house personnel responsible for locating responsive documents were unaware of its existence until DJG received Plaintiffs' Fourth Request for Production. DJG contends that it produced CEA 416 as soon as it was located. DJG maintains that during its investigation into why CEA 416 had not been previously produced, DJG located and promptly produced twenty additional CEAs.

DJG explains that a paralegal employed by DJG coordinated the investigation internally at DJG, including the search for CEAs responsive to Plaintiffs' First Request No. 13. She did not request that DJG's accounting department search for all CEAs pertaining to the Touriva, as she was unaware that DJG's accounting department maintained files of all CEAs. She was able to locate two CEAs relating to the Touriva, which apparently were located in other files, and those were provided to Plaintiffs in DJG's document production. She apparently believed that those were the only two CEAs in existence that were

responsive to Request No. 13. This paralegal left DJG's employ in September 2005.

DJG further explains that on October 31, 2005, another paralegal began working for DJG and took over the duties of locating documents to be produced in this case. Prompted by Plaintiffs' Fourth Requests for Production, this new paralegal investigated why CEA 416 had not been previously produced and whether any additional CEAs responsive to Plaintiffs' discovery requests existed. She learned that the CEAs are maintained in DJG's accounting department. Upon her review of the accounting department files, she discovered twenty additional CEAs, which were then produced to Plaintiffs.

DJG does not dispute that it was obligated to produce the CEAs in response to First Request No. 13, and it concedes that it should have found and produced CEA 416 when it was first requested by Plaintiffs. DJG argues, however, that its failure to initially produce CEA 416 was the result of a mistake and not an attempt to conceal evidence, as Plaintiffs assert.

### C. DJG's Alleged Failure to Provide Discovery Regarding the Redesigned Touriva

With respect to the allegations raised by Plaintiffs in their supplemental brief filed on April 20, 2006, Plaintiffs allege that DJG has not provided truthful responses to Plaintiffs' discovery requests dealing with the redesigned Touriva. Plaintiffs claim they discovered the existence of the redesigned Touriva for the very first time on April 18, 2006, when their counsel discovered two of the redesigned car seats for sale on eBay. Plaintiffs also allege that DJG intentionally failed to supplement its discovery responses and has engaged in "a practice of hiding extraordinarily pertinent and material information."[8]

DJG responds that it has never concealed the redesigned Touriva from Plaintiffs. It explains that the redesigned Touriva has been available for purchase at retail stores throughout the United States. It also

---

[8] Pls.' Suppl. Mem. (doc. 163) at p.1.

asserts it has never hidden any documents or other evidence regarding the Touriva's redesign from Plaintiffs. To the contrary, DJG asserts it has produced e-mails, meeting minutes, photographs, drawing and sled tests relating to the redesigned, "notchless" version of the Touriva. DJG provides specific details about photographs, blueprints and drawings of the redesigned Touriva and various documents relating to the implementation of the new design, which it has provided in response to various requests for production and interrogatories served by Plaintiffs. DJG also explains how it has produced documents relating to compliance testing of the redesigned Touriva and documents relating to CEA 416 regarding the redesign process. While DJG admits that it has never provided an actual exemplar of the redesigned Touriva to Plaintiffs, it states that Plaintiffs never requested such an exemplar.

## II.     Discussion and Analysis

Plaintiffs seek sanctions pursuant to subsections (b)(2) and (c)(1) of Federal Rule of Civil Procedure 37.

### A.     Rule 37(b)(2) Sanctions

#### *1.     Applicable standard*

Subsection (b)(2) of Rule 37 authorizes a district court to sanction a party who "fails to obey an order to provide or permit discovery."[9] Included among the available sanctions are (1) an order that facts be deemed established "in accordance with the claim of the party obtaining the order,"[10] (2) an order refusing to allow the disobedient party to oppose certain claims or to support defenses, or prohibiting the

---

[9] *Proctor & Gamble Co. v. Haugen*, 427 F.3d 727, 737 (10th Cir. 2005) (quoting Fed. R. Civ. P. 37(b)(2)).

[10] Fed. R. Civ. P. 37(b)(2)(A).

9

disobedient party from introducing certain matters in evidence,[11] and (3) an order striking certain of the disobedient party's pleadings.[12]

Rule 37(b)(2) provides that in lieu of, or in addition to, any of these orders, the Court "shall require" the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the non-compliance. An award of fees and expenses is mandatory unless the court finds that the noncompliance was substantially justified or that other circumstances would make an award of expenses unjust.[13]

A district court is afforded wide discretion in choosing an appropriate sanction.[14] That discretion, however, is limited in that the chosen sanction "must be in the interests of justice and proportional to the specific violation of the rules."[15] While Federal Rule of Civil Procedure 37(b)(2) authorizes default judgments against a party who fails to comply with a court order to provide or permit discovery, the court's discretion to enter default judgment is not unlimited.[16] The Tenth Circuit has emphasized that "a default judgment is a harsh sanction."[17] Accordingly, due process requires that the "failure" giving rise to the

---

[11] Fed. R. Civ. P. 37(b)(2)(B).

[12] Fed. R. Civ. P. 37(b)(2)(C).

[13] Fed. R. Civ. P. 37(b)(2).

[14] *Proctor & Gamble Co. v. Haugen,* 427 F.3d 727, 738 (2005).

[15] *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996).

[16] *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) (citing Fed. R. Civ. P. 37(b)(2) and (d)).

[17] *FDIC v. Daily*, 973 F.2d 1525, 1530 (10th Cir. 1992); *see also M.E.N.,* 834 F.2d at 872.

sanction must be the result of willfulness or bad faith, and not the mere inability to comply.[18]

In addition to finding the offending party's failure to be willful, the court must also find the entry of default judgment to be a "just" sanction for the offending party's misconduct.[19] To make this determination, courts typically consider one or more of the following factors: (1) the degree of actual prejudice to the non-offending party; (2) the amount of interference with the judicial process caused by the offending party; (3) whether the court warned the offending party in advance that default judgment would be a likely sanction for noncompliance; and (4) the efficacy of lesser sanctions.[20] These factors do not constitute a rigid test, but rather represent criteria for the district court to consider in selecting a sanction.[21] Only when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits" is default judgment an appropriate sanction.[22]

### 2. Application of the Rule 37(b)(2) standard to the facts of this case

#### (a) DJG's belated production of CEA 416

As noted above, Rule 37(b)(2) sanctions are applicable only when a party fails to obey an order to provide or permit discovery. Plaintiffs base their request for Rule 37(b)(2) sanctions on DJG's failure to comply with the Court's August 31, 2006 Order granting Plaintiffs' motion to compel and directing DJG to produce all documents responsive to First Request No. 13. More specifically, Plaintiffs contend that

---

[18] *M.E.N.,* 834 F.2d at 872.

[19] *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (discussing dismissal of claims as Rule 37(b)(2)) sanction.

[20] *See id.* at 921.

[21] *Id.*

[22] *Id.* (internal quotations omitted).

DJG's failure to produce CEA 416 in response to that Order warrants the entry of default judgment, or in the alternative, a finding that the "recess" in the Touriva at issue was a defective and unreasonably dangerous condition that caused or contributed to Leeyiceth Reyna's injuries.

The Court does not find the requested sanctions to be warranted. Certainly, the standard for entering default judgment has not been met here. The Court does not find that DJG's failure to produce CEA 416 was the result of willfulness or bad faith on DJG's part. Even if the Court were to find DJG's failure to produce the document willful or in bad faith, the Court would not find that the other factors weigh in favor of such a harsh sanction. Plaintiffs have not demonstrated that they have suffered, or will suffer, significant prejudice as a result of the belated production of CEA 416. Plaintiffs received a copy of CEA 416 on January 30, 2006, and will have until June 28, 2006 to complete discovery.[23] This is a significant period of time within which to conduct any additional discovery regarding the CEA and the design changes to the Touriva. Although Plaintiffs complain about their experts having to re-analyze the evidence, the Court finds that this does not rise to the level of significant prejudice that would justify the imposition of such a harsh sanction. Furthermore, the Court cannot find that there has been a serious interference with the judicial process. Finally, DJG has never been warned that its conduct might result in the imposition of default judgment. Consequently, the Court finds no basis to enter the sanction of default judgment against DJG.

In addition, the Court does not believe that Plaintiffs are entitled to a finding that the "recess" in the Touriva at issue was a defective and unreasonably dangerous condition that caused or contributed to Leeyiceth Reyna's injuries. Such a sanction would have virtually the same effect as granting default

---

[23]*See* Dec. 8, 2005 Amended Scheduling Order (doc. 121) at ¶ 2.

judgment against DJG. For the reasons sets forth above, such a harsh sanction is out of proportion to DJG's fault in not timely producing the CEA, and must be rejected.

Notwithstanding the above, the Court does not find that DJG's eventual production of CEA 416 should absolve DJG of liability. Indeed, the fact that a party ultimately produced the requested document is not determinative of whether sanctions should be imposed.[24] Rule 37(b)(2) permits imposition of sanctions when a party "fails to obey an order," a failure that is not absolved upon production.[25] Moreover, attorneys have a duty to insure that their clients discharge in good faith their duties under the discovery provisions of the Federal Rules of Civil Procedure, as implemented by specific orders of this Court. "[P]arties cannot fail to produce highly relevant documents within their possession with impunity. Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents."[26]

The Court cannot find that DJG was sufficiently diligent in planning and executing an effective search for the CEAs requested by Plaintiffs in their First Request No. 13. Trial counsel have a duty to exercise some degree of oversight over their clients' employees to ensure that they are acting competently, diligently, and ethically in order to fulfill their responsibility to the Court and opposing parties.[27] Accordingly, trial counsel have the obligation to communicate with in-house counsel to identify the persons

---

[24]*Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1374 (10th Cir. 1978) ("Final production is not determinative" as to whether Rule 37 sanctions should be imposed for failure to comply with Court order.).

[25]*Id.* (quoting Fed. R. Civ. P. 37(b)(2)).

[26]*Bratka v Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995).

[27]*Id.*

having responsibility for the matters that are the subject of the document requests and to identify all employees likely to have been authors, recipients or custodians of documents falling within the request.[28] Trial counsel also have an obligation to review all documents received from the client to see whether they indicate the existence of other documents not previously retrieved or produced.[29] The Court does not find that these duties were met here with respect to CEA 416 and the Court's Order that DJG produce all documents responsive to First Request for Production No. 13.

In light of the above, the Court finds the imposition of some monetary sanctions to be appropriate. As noted above, Rule 37(b)(2) provides that where the Court finds a party has failed to comply with an order to provide or permit discovery, the Court "shall require" the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the non-compliance.[30] The imposition of these sanctions is mandatory unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.[31]

The parties have exhaustively briefed DJG's failure to provide CEA 416, and the Court cannot find that DJG's failure to produce it was substantially justified or that circumstances make an award of expenses to Plaintiffs unjust. The Court will therefore permit Plaintiffs to recover the reasonable expenses and attorney fees they have incurred as a result of (1) DJG's failure to comply with the Court's August 31, 2006 Order and belated production of CEA 416, and (2) Plaintiffs' filing of the instant Motion for

---

[28]*Id.*

[29]*Id.*

[30]Fed. R. Civ. P. 37(b)(2).

[31]*Id.*

14

Sanctions.

To aid the Court is determining the proper amount of the award, Plaintiffs shall file, within **twenty (20) days** of the date of this Order an affidavit itemizing the reasonable expenses and attorney fees that Plaintiffs have incurred. DJG shall have **twenty (20) days** thereafter to file a response. After reviewing these pleadings, the Court will issue an order specifying the particulars of the award.

>       (b)     *DJG's alleged failure to provide discovery regarding the redesigned Touriva*

The Court will now turn to Plaintiffs' request for Rule 37(b)(2) sanctions due to the misconduct alleged in Plaintiffs' supplemental briefs, i.e., DJG's alleged failure to produce documents and respond to interrogatories regarding the redesigned Touriva. After carefully reviewing the parties' supplemental briefing and the document requests and interrogatories that Plaintiffs contend are at issue, the Court concludes that Plaintiffs have failed to demonstrate that DJG has violated any Order to provide or permit discovery regarding the redesigned Touriva, except as to CEA 416. Accordingly, the Court will deny Plaintiffs' Motion for Rule 37(b)(2) sanctions as it applies to Plaintiffs' supplemental allegations of misconduct.

**B.     Sanctions under Rule 37(c)(1)**

>    1.    *Applicable standard*

As noted above, Plaintiffs also request sanctions under subsection (c)(1) of Rule 37. That subsection provides as follows:

> A party that without substantial justification *fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2),* is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard,

may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.[32]

As noted above, Plaintiffs contend that Rule 37(c)(1) sanctions are warranted on the basis that DJG failed to amend its responses to not only First Request No. 13 but other various requests for production and interrogatories seeking documents and information regarding the redesigned Touriva. In other words, Plaintiffs are contending that DJG failed to meet its duty under Rule 26(e))(2) to amend its prior discovery responses.

Rule 26(e)(2) provides in pertinent part:

A party is under a duty seasonably to amend a prior response to an interrogatory [or] request for production . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.[33]

Thus, in order for Rule 37(c)(1) sanctions to be imposed here, the Court must first determine that DJG was under a Rule 26(e)(2) duty to amend its prior discovery responses and failed to meet that duty. If the Court makes such a finding then the Court must determine whether substantial justification for failing to amend the discovery responses existed.[34] If the failure was not substantially justified then the Court must determine whether the failure to amend the responses was harmless.[35] The burden to establish substantial

---

[32]Fed. R. Civ. P. 37(c) (emphasis added).

[33]Fed. R. Civ. P. 26(e)(2).

[34]*Umbenhower v. Copart, Inc.,* 222 F.R.D. 672, 675 (D. Kan. 2004)(citing *Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 639 (D. Kan. 2001) (quoting *Mounger v. Goodyear Tire & Rubber Co.*, No. 99-2230-JWL, 2000 WL 1466198, at *2 (D. Kan. Sept. 22, 2000)).

[35]*Umbenhower,* 222 F.R.D. at 675.

16

justification and harmlessness is on DJG.[36]

The determination of whether a Rule 26 violation is "substantially justified" or "harmless" is entrusted to the broad discretion of the district court.[37]  A court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.[38]  Nevertheless, the Tenth Circuit has held that the following factors should guide the district court's discretion:  (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing the evidence would disrupt the trial; and (4) the party's bad faith or willfulness.[39]

### 2. *Application of the Rule 37(c)(1) standard to the facts of this case*

#### (a) *DJG's belated production of CEA 416*

The Court does not find that Rule 37(c) sanctions are warranted with respect to DJG's belated production of DEA 416, as the Court does not find that DJG violated any Rule 26(e)(2) duty to amend it response to First Request No. 13.  DJG amended its response to Request No. 13 shortly after Plaintiffs brought the apparent existence of the CEA 416 to DJG's attention.

Even if the Court were to hold otherwise and find a Rule 26(e) violation on DJG's part, the Court would still conclude that Rule 37(c)(1) sanctions are not warranted with respect to CEA 416.  Applying

---

[36]*Burton,* 203 F.R.D. at 639 (burden to show substantial justification and harmlessness is on party who is claimed to have failed to serve the required disclosure or amended discovery response).

[37]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

[38]*Id.* (quoting *Woodworker's Supply*, 170 F.3d at 993).

[39]*Id*. (quoting *Woodworker's Supply*, 170 F.3d at 993).

the four factors cited above, the Court finds DJG's belated production of CEA 416 to be harmless. Plaintiffs have not been substantially prejudiced by its late production—they have had considerable time to conduct discovery since learning of CEA 416's existence and will have had ample time to prepare for the October 3, 2006 trial. Moreover, there is no reason to believe that the introduction of the CEA as evidence at trial would disrupt the trial. This is not a case where the document was discovered shortly before trial, where Plaintiffs can claim surprise. Finally, the Court does not find that DJG has acted in bad faith or wilfully. Accordingly, the Court will decline to enter Rule 37(c)(1) sanctions with respect to DJG's belated production of CEA 416.

> *(b)   DJG's alleged failure to provide discovery regarding the redesigned Touriva*

The Court will also decline to impose Rule 37(c)(1) sanctions based on any alleged failure of DJG to produce documents and respond to interrogatories relating to the redesigned Touriva. Plaintiffs have failed to show how DJG has violated any obligation to amend its discovery responses under Rule 26(e) as to any documents or information pertaining to the redesigned Tourivas. Accordingly, the Court will deny Plaintiffs' Motion for Rule 37(c)(1) sanctions as it applies to Plaintiffs' supplemental allegations of misconduct.

### C.   Sanctions Imposed Under the Court's General Powers

The Court recognizes that sanctions may be awarded independent of Rule 37(b) or (c), in those situations where a party or its counsel engages in abusive litigation practices.[40] It is well settled that a

---

[40]*See Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)).

district court has the "inherent power" to levy sanctions in response to such abuse.[41]

The Court does not believe that DJG or its counsel has engaged in abusive litigation tactics. The Court therefore does not believe it appropriate or necessary to levy sanctions against DJG or its counsel under the Court's inherent powers to sanction.

## III.    Conclusion

Having carefully reviewed the parties' briefs and having examined the totality of the circumstances presented in this case, the Court concludes that the sanctions requested by Plaintiffs, other than an award of fees and expenses incurred, are not warranted and would not serve the interest of justice. The Court is of the opinion that the type of drastic sanctions requested by Plaintiffs should be reserved for those egregious cases where a party has abused the discovery process—either through grossly negligent, reckless or willful conduct or by flouting court orders compelling compliance with discovery obligations. Those circumstances are not present here.

In light of the foregoing, the Court denies Plaintiffs' Motion for Sanctions (doc. 139), except to the extent Plaintiffs seek to recover their attorney fees and expenses. Plaintiffs will be allowed to recover the reasonable attorney fees and expenses they have incurred as a result of (1) DJG's failure to comply with the Court's August 31, 2006 Order and its belated production of CEA 416, and (2) Plaintiffs' filing of the instant Motion for Sanctions. The parties shall follow the schedule set forth herein for the filing of pleadings relating to the amount of the award.

---

[41]*See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991) (discussing the inherent powers of courts to impose sanctions for litigation abuses); *Roadway Express,* 447 U.S. at 765 (recognizing court's inherent power to sanction).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Sanctions (doc. 139) is denied except to the extent Plaintiffs shall recover the reasonable attorney fees and expenses they have incurred as a result of (1) DJG's failure to comply with the Court's August 31, 2006 Order and its belated production of CEA 416, and (2) Plaintiffs' filing of the instant Motion for Sanctions.

**IT IS FURTHER ORDERED** that Plaintiffs shall file, within **twenty (20) days** of the date of this Order, an affidavit itemizing the reasonable expenses and attorney fees Plaintiffs have incurred. DJG shall have **twenty (20) days** thereafter to file a response.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 1st day of June, 2006.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:  All counsel and *pro se* parties